Argued and submitted July 22, reversed and remanded for entry of judgment November 13, appellant's petition for reconsideration filed November 18, 1996, allowed by opinion February 19, 1997
See 146 Or App 436, 934 P2d 505 (1997)

Marian C. COOLEY,
*Plaintiff,*

*v.*

Robert Roger FREDINBURG,
*Appellant,*

Marion C. COOLEY,
as assignee of
U. S. National Bank of Oregon,
a national banking association;
First Interstate Bank of Oregon, N.A.;
L. Ken Casteel; John C. Preston and Patricia J. Preston,
husband and wife;
Timotheas John Horn and Normalee D. Horn,
husband and wife;
Tischhauser, Cooper & Co.,
a partnership;
Frieda A. Kuttig; and
Federal Deposit Insurance Corporation,
in its corporate capacity as successor to
Bear Creek Valley Bank,
*Defendants,*

*and*

HOGUE INVESTMENT CORPORATION,
*Respondent.*

(88-0971-J-1; CA A89024)

927 P2d 124

Douglas J. Richmond argued the cause for appellant. With him on the briefs were Kellington, Krack, Richmond & Blackhurst and Matthew Sutton.

Richard D. Adams argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

**EDMONDS, J.**

Appellant Fredinburg appeals from a judgment dismissing his claim for restitution against respondent Hogue Investments (Hogue) and awarding judgment against him for $14,581, representing the surplus proceeds from a previous foreclosure sale of Fredinburg's property. We reverse.

Fredinburg is the owner of real property that was subject to several liens. The senior lienholder, Cooley, filed a complaint for foreclosure and joined as defendants all junior lienholders as well as Fredinburg. One of the junior lienholders was the Federal Deposit and Insurance Corporation (FDIC). Cooley's complaint requested foreclosure of all liens on the property and sought a judgment against Fredinburg for the amount owed to her. Cooley's complaint also requested that the court apply

"any proceeds of the sale * * * first toward the costs of sale, then toward satisfaction of plaintiff's judgment prayed for herein, and *any surplus to the party or parties who may establish their right thereto.*" (Emphasis supplied.)

Except for FDIC and one other lienholder that had assigned its interest in the property to Cooley, all of the defendants, including Fredinburg, failed to appear, and the court entered orders of default against them. FDIC eventually entered into a stipulated judgment with Cooley that foreclosed all of the parties' liens. The stipulated judgment did not reduce to judgment the debt owed to FDIC. The judgment, however, provided:

"6. The proceeds of sale shall be applied (a) to the costs of sale; (b) then toward the satisfaction of plaintiff's judgment awarded in paragraph 1 above; (c) next toward the satisfaction of defendant's, Marian C. Cooley as assignee of U.S. National Bank of Oregon, judgment awarded in paragraph 3 above; and (d) the surplus, if any, to the Clerk of this Court to be disposed of by further order of this Court."

A third party bought the property at the foreclosure sale for more than was necessary to satisfy the judgment in favor of Cooley. As a result, the sheriff paid $14,581 as surplus proceeds to the clerk of the court. The clerk thereupon sent the surplus proceeds to Fredinburg. The trial court,

upon learning of the clerk's action, sent a letter to Fredinburg demanding that Fredinburg return the money. Fredinburg did not respond to the court's letter or return the money.

FDIC thereafter moved for an order directing that the surplus proceeds be disbursed to it. It did not serve Fredinburg with the motion. By this time, Fredinburg had redeemed the property. Pursuant to the motion, the trial court ordered "that the Trial Court Administrator pay to the FDIC, or its assigns, the excess proceeds of Sheriff's sale in the sum of $14,581.40." It further ruled:

> "6. On or about June, 1990, [Fredinburg] without seeking or obtaining approval or order of this Court, wrongfully obtained from the Trial Court Administrator payment to him of the $14,581.40 in excess proceeds of sale which should properly have been subject to further order of this Court; this Court has requested of Fredinburg the prompt return of these improperly obtained funds, which request has been refused.

> "7. The FDIC has represented to the Court that it intends to exercise an existing right to further redeem the subject property on or about February 11, 1991, during the course of which it will deposit with the Trial Court Administrator the approximate sum of $87, 350, which sum would ordinarily be disbursed as a matter of course to Fredinburg as the previous redemptioner of the property.

> "* * * * *

> "IT IS FURTHER ORDERED that the Trial Court Administrator, in the event of a further redemption of the subject property, shall recover from any future redemption funds received which would otherwise be payable [to] [Fredinburg] the sum of $14,581.40, as a recovery of the excess proceeds from the original Sheriff's sale of June 14, 1990, which were previously inadvertently paid to Mr. Fredinburg without authority. That sum shall then be paid by the Trial Court Administrator to the FDIC or its assigns in accordance herewith."

Fredinburg received no notice of the court's order before its entry.

Eventually, Hogue Investments, as the assignee of any interest that FDIC had in the property, gave notice of its

intention to redeem the property from Fredinburg. Fredinburg objected, but the trial court concluded that Hogue was entitled to redeem the property. On appeal, we reversed, holding that the judgment of foreclosure had foreclosed FDIC's lien and that Hogue, as FDIC's assignee, lost its right to redeem the property because it had not "established" its lien before the foreclosure. *Cooley v. Fredinburg*, 114 Or App 532, 836 P2d 162 (1992), *rev den* 315 Or 311 (1993). While that appeal was pending, Hogue remained in possession of the property, received rents from it and made improvements.

After our decision, Fredinburg brought this action against FDIC[1] and Hogue seeking restitution for the actual rent received from the property or the property's reasonable rental value, whichever was greater, during the time that Hogue was in possession of the property. Hogue counterclaimed, alleging that the improvements that it had made to the property while it was in possession had increased the property's fair market value and that the costs of those improvements should be offset from the rent it had received. It also alleged that Fredinburg was indebted to it for the surplus of $14,581, as determined by the previous order and that it was entitled to recover that amount from him. The trial court dismissed Fredinburg's claims for restitution against both Hogue and FDIC on the ground that the cost of Hogue's improvements was greater than the rent received. It further ruled that the earlier order had determined FDIC's entitlement to the surplus proceeds and that it was binding on Fredinburg. Fredinburg appeals from the judgment reflecting these rulings.

■■ We first consider whether the trial court erred in dismissing Fredinburg's claim for restitution. In *Lytle v. Payette-Oregon Irr. Dist.*, 175 Or 276, 152 P2d 934 (1944), the court held that, when a judgment creditor purchases land at an execution sale pursuant to an erroneous judgment, the judgment debtor is entitled to complete restitution including the

---

[1] FDIC is not involved in this appeal.

"reasonable rental value, or the rents, issues and profits of the premises for the period during which the judgment debtor was deprived of possession." *Id.* at 287.

The court, relying on *Restatement of Restitution* § 74e (1937), further said that the compensation to the debtor should be offset by "expenses *necessarily* incurred in its protection, and disbursements for taxes and other liens." *Id.* at 287 (emphasis supplied). In other words, only those expenses that are necessary for the protection of the property, including costs associated with taxes and other liens, may be offset from the restitution owed the judgment debtor. Section 74e of the *Restatement* provides that those expenses *do not* include "the expense of improvements."[2] In light of these authorities, we hold that the trial court erred in determining that Fredinburg's claim for restitution should be offset by the costs of improvements that raised the property's fair market value. The only costs that the trial court could properly consider as offsets were those that were incurred for the property's protection.

■ Fredinburg also argues that Hogue did not charge the fair rental value of the property when it rented the property, and that it did not rent some of the property that Fredinburg had rented while he was in possession. Hogue counters that it charged a fair rental value and that part of the rents Fredinburg received before he lost possession of the property were obtained in violation of county ordinances. Therefore, Hogue reasons, he was not entitled to reimbursement of rent in that regard. On *de novo* review, we agree with Hogue's argument. The court in *Lytle* held that where the creditor "has rented the land to others, * * * he [is] liable to account only for the rents received[.]" *Id.* at 287. Furthermore, it would be inequitable to permit Fredinburg to recover

---

[2] The *Restatement* provides the following illustration:

"A obtains a judgment in ejectment against B and is put in possession of Blackacre. After knowledge that an appeal has been taken, A makes improvements thereon to the amount of $1,000, at an expense of $100 repairs a roof which otherwise would have leaked, and pays taxes thereon to the amount of $300. He remains on the land for two years, at the end of which time the judgment is reversed. B is entitled to restitution of the land and to the reasonable rental value of the land during the two years, less the amount expended by A for the necessary repairs and for the payment of taxes; ordinarily restitution for the value of the improvements would not be granted."

rents for a use of the property that violates any laws or ordinances.

■ Based on the evidence before us, we conclude that the necessary expenses for the protection of the property included the cost of repairing the roof, replacing the carpet, replacing kitchen appliances and a sliding glass door that no longer functioned, and repainting walls that had not been painted for over 20 years. In each of these expenses, the evidence indicates that without the replacements the property would have been unrentable. We agree with Fredinburg that the trial court erred in permitting Hogue to offset the costs of constructing a road and improving an artificial pond on the property. Both of those activities constituted improvements to the land. In sum, the necessary expenses for the protection of the property totaled $25,356, and the gross rent received by Hogue amounted to $35,193. Therefore, the trial court should enter judgment on behalf of Fredinburg for $9,837 on remand.[3]

■ Fredinburg also assigns error to the portion of the judgment that reflects the trial court's determination that he is bound by the earlier order that required him to deliver the surplus proceeds from the sale to FDIC or its assigns. Fredinburg concedes that he is making a collateral attack on the order and that he can only attack a judgment or order collaterally for lack of personal or subject matter jurisdiction. *See Wood v. White*, 28 Or App 175, 178, 558 P2d 1289 (1977) ("It is well settled that a judgment or decree is not subject to collateral attack except for voidness. A void judgment arises only when the rendering court lacks either jurisdiction over the parties or over the subject matter." (citation omitted)). Nonetheless, he argues that the order was void, because it granted relief that was not requested in the original complaint, and that the court lacked personal jurisdiction over

---

[3] Hogue also argues that Fredinburg is not entitled to equitable relief because he is before the court with "unclean hands." It asserts that Fredinburg has unclean hands because he ignored the trial court's request that he return the surplus proceeds. Assuming without deciding that Fredinburg's conduct violated the "fundamental conceptions of equity jurisprudence," *Dickerson v. Murfield*, 173 Or 662, 669, 147 P2d 194 (1944) (quoting 2 Pomeroy's Equity Jurisprudence, 52 (5th ed 1941)), the doctrine of unclean hands is nevertheless inapplicable. Fredinburg's conduct regarding the surplus money was discrete from and unrelated to his entitlement to restitution for rent during the time that he was not in possession.

him to grant any relief that the original complaint did not request.

ORCP 67 C(1) provides:

"A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. However, a default judgment granting equitable remedies may differ in kind from or exceed in amount that prayed for in the demand for judgment, provided that reasonable notice and opportunity to be heard are given to any party against whom the judgment is to be entered."

We agree with Fredinburg's argument that the order provided relief that was different in kind from what had been prayed for in the complaint and that he was not given reasonable notice or an opportunity to be heard regarding that relief. The question is whether the failure to comply with ORCP 67 C(1) made the resulting order void or merely voidable.

 The fact that a court has initial jurisdiction over the parties and the subject matter does not authorize it to act without appropriate notice to the parties. If the proposed order would grant relief different from that contemplated by the original proceeding and would affect a party's personal rights, due process requires that there be reasonable notice and an opportunity to be heard. *Scarth v. Scarth,* 211 Or 121, 126, 315 P2d 141 (1957). If the notice of the proposed relief is so defective or lacking that it does not satisfy the requirements of due process, the court is deprived of jurisdiction to enter an order arising out of such a defective procedure. *Hood River County v. Dabney,* 246 Or 14, 21, 423 P2d 954 (1967). Such an order, entered without jurisdiction, must be considered a nullity.[4] *State ex rel. v. Hall,* 153 Or 127, 129, 55 P2d 1102 (1936).

In this case, the trial court granted relief beyond what the complaint requested when it ordered that Fredinburg deliver the surplus proceeds from the sale to FDIC or its

---

[4] *Restatement of Judgments* § 8 (1942), provides that:

"A judgment is void if there is a failure to comply with such requirements as are necessary for the exercise of power by the court."

assigns. Had notice been given under ORCP 67 C(1), Fredinburg would have had an opportunity to appear and be heard regarding whether such an order should issue. In the absence of such notice,[5] he was deprived of due process of law. Accordingly, we hold that the court's order is void and the trial court erred in determining that Fredinburg was bound by it.[6]

Reversed and remanded for entry of judgment in accordance with this opinion.

---

[5] Hogue argues that Fredinburg was given notice that FDIC claimed an interest in the proceeds when the trial court sent the letter demanding that Fredinburg return the surplus proceeds. The letter stated:

"We erroneously paid over to you $14,581.40 on June 20, 1990. That money is owned by and is owed to another party to the lawsuit, FDIC. Please deliver those funds back to the Clerk's Office forthwith and, in any event, no later than ten days from the date of this letter."

The letter may have given Fredinburg notice that FDIC claimed the surplus proceeds but it did not give him an opportunity to be heard on FDIC's claim, as contemplated by the requirements of ORCP 67 C(1).

[6] Hogue argues that Fredinburg could have assigned error to the court's order regarding the disposition of the surplus proceeds when it first appealed. However, Fredinburg's first appeal was from an entirely different order from the order regarding the surplus proceeds.