Argued and submitted October 20, 2003, order denying motion to set aside judgment reversed; remanded with instructions to enter amended judgment in amount of the prayer of plaintiff's complaint March 10, 2004

Forest MONTOYA,
*Respondent,*

*v.*

HOUSING AUTHORITY OF PORTLAND,
an Oregon nonprofit organization,
*Defendant,*

*and*

QUANTUM RESIDENTIAL, INC.,
dba Quantum Residential,
an active Washington corporation,
qualified to do business in Oregon,
*Appellant.*

0007-07638; A118655

86 P3d 80

Todd S. Baran argued the cause and filed the brief for appellant.

Kathryn Hall Clarke argued the cause for respondent. With her on the brief was Daniel Snyder.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

EDMONDS, P. J.

Deits, C. J., concurring.

**EDMONDS, P. J.**

Defendant Quantum Residential, Inc. (Quantum) appeals from the trial court's denial of its motion to set aside a default judgment entered against it. ORCP 71 B(1). Quantum first asserts that the judgment is void for lack of jurisdiction because the judgment's face amount exceeds the amount pleaded, contrary to ORCP 67 C(1). Alternatively, Quantum asserts that the trial court erred in determining that it had not established that its failure to defend was the product of "excusable neglect" pursuant to ORCP 71 B(1)(a). We agree with Quantum's first argument and hold that the judgment is void to the extent that its amount exceeds the amount sought in plaintiff's complaint. Otherwise, we agree with the trial court's ruling.

On July 28, 2000, plaintiff filed an action for personal injuries against Quantum and the Housing Authority of Portland (HAP), alleging injuries as a result of a fall by plaintiff on premises owned by HAP and managed by Quantum. Plaintiff alleged, among other things, a failure to maintain, inspect, and repair the premises. The original complaint alleged:

> "[P]laintiff prays for judgment against defendants and each of them jointly and severally, in the sum of $40,000.00 in non-economic damages, *to be proven more accurately at trial*, with economic damages for $25,800.00, and for her costs, disbursements and attorney fees incurred herein."

(Emphasis added.) Plaintiff filed an amended complaint on August 30, 2000, containing similar language:

> "Plaintiff suffered non-economic damages for $40,000.00.
>
> "12
>
> "As a further result of defendants' negligence, plaintiff incurred *approximately* $9,000.00 in health care and medical expenses and approximately $16,800.00 in lost wages and benefits, *said wage loss continuing and to be proven more accurately at trial*."

(Emphasis added.) Both defendants were served with civil process. On October 5, 2000, an order of default was entered against Quantum. On October 19, 2000, pursuant to plaintiff's request, the court dismissed the claims against HAP with prejudice. On December 7, 2000, the trial court awarded a default judgment against Quantum in the amount of $79,766, which included $40,000 in noneconomic damages and $39,766 in economic damages. The award exceeded the specific amount prayed for in the original and amended complaints by $13,966. The record includes a copy of the notice of entry of judgment in the trial court file that lists Quantum's name but not its address. Quantum asserts that it did not receive notice that a judgment had been entered against it until plaintiff made a post-judgment demand for payment on February 9, 2002. On March 8, 2002, Quantum filed a motion to set aside the default judgment on the basis of excusable neglect pursuant to ORCP 71 B(1)(a).

In support of its motion to set aside the default judgment, Quantum submitted an affidavit from its president, Gary O'Connell. O'Connell averred that he learned of the lawsuit in August 2000 but that, based on HAP's previous practices and based on a conversation with HAP's Director of Asset Management, John Meyer, he believed that HAP's insurer, Housing Authority Risk Retention Pool (HARRP), would undertake the defense of Quantum. O'Connell asserted:

> "When an action is filed against a HAP building and the property manager, occasionally the property manager will defend the case. However, most often HAP—as owner of the building—will take on the defense of the case through HARRP."

O'Connell also said in his affidavit that, at the time of the filing of the lawsuit, Meyer had "informed [him] that HAP would take over defense of this case." Meyer, on the other hand, testified that he did not recall whether O'Connell asked him if HAP or HARRP would defend Quantum. He did, however, note that, although it was not his understanding that HAP or HARRP "would necessarily represent [Quantum]," it was his understanding "that HAR[R]P and

[HAP's] counsel should have been working with the property—with Quantum's counsel to *coordinate a defense* on" the claim. (Emphasis added.) Meyer noted that his usual practice is to "make sure the property manager would forward [information regarding a lawsuit] on to HAR[R]P," or that the asset manager working for him would coordinate that.

Additionally, portions of a "Property Management Services Agreement" between HAP and Quantum were submitted to the court by the parties with regard to Quantum's motion to set aside the default judgment. The agreement contains two relevant indemnification provisions on which the parties relied below in support of their respective excusable neglect arguments. Article 5(A)(1) of the agreement states:

> "Indemnification for Third Party Injuries to Person and Property:   Irrespective of whether [Quantum] is negligent [Quantum] shall indemnify, defend and save [HAP] harmless from any and all claims, or liability relating to the management of the premises. This obligation shall include all costs and expenses (including, but not limited to, fines, penalties and reasonable attorney fees), for injuries or damages to persons, including any employee of [HAP], or property of others. * * *
>
> "This obligation does not extend to claims arising against [HAP] which solely allege wrongdoing by * * * [HAP], its officers or employees. [Quantum's] obligation to indemnify [HAP] shall not exceed five million ($5,000,000) for any single claim or in the aggregate for each year during which this Agreement is in effect. This limitation shall not apply to claims based upon allegations of the sole wrongdoing of [Quantum]."[1]

Article 5(A)(2), of the agreement provides:

> "Indemnification for Violation of Law:   [HAP] shall indemnify, defend and save [Quantum] from any and all claims, or liabilities, as well as all costs and expenses thereof (including, but not limited to, fines, penalties and reasonable attorney's fees) involving alleged or actual *violation by [HAP] of a criminal statute, rule or regulation pertaining to the premises, property, the management or operation of the Property*, except to the extent that such a claim, proceeding

---

[1] The agreement refers to Owner (HAP) and Agent (Quantum).

or liability resulted from the intentional wrongdoing of [Quantum] or the failure of [Quantum] to notify [HAP] of the issue after having gained actual knowledge thereof."

(Emphasis added.) The agreement further states that, "except in any claim which is clearly against only [HAP], [Quantum] shall be responsible for conducting the *joint defense* and *protecting the common interest*." (Emphasis added.)

The trial court denied Quantum's motion, ruling that it failed to establish sufficiently that it was entitled to relief based on its claim of excusable neglect. The trial court specifically referred to the provision of the agreement that required Quantum to conduct a joint defense and to protect the common interest of HAP and itself. The trial court also said that it "was not persuaded that Quantum [had] shown that the HAP agreed to defend Quantum" and that "Quantum and Gary O'Connell did not have reason to believe that the HAP was going to defend Quantum in this lawsuit."

We turn to Quantum's first assignment of error. Quantum asserts:

"Quantum did not argue below that the trial court lacked jurisdiction; that the default judgment is void; or that the default judgment should be set aside under ORCP 71 B(1)(d). However, '[a] void judgment is subject to collateral attack at any time.' * * * Also, a question concerning the trial court's jurisdiction is not waivable. Finally, as explained *infra*, this court can and should treat the trial court's denial of the motion to set aside that judgment as plain error. ORAP 5.45(4)(b). For any of these reasons, this otherwise unpreserved error is reviewable."

(Citations omitted.)

In light of the above arguments, we determine first whether the trial court had jurisdiction to enter a default judgment for approximately $14,000 more than requested by plaintiff's pleading. First, there is no indication in the record that the trial court lacked personal jurisdiction over the parties at the commencement of the action. Rather, the record reflects that Quantum was properly served at the outset of the lawsuit. Second, under the Oregon Constitution, trial courts "have subject matter jurisdiction over all actions

unless a statute or rule of law divests them of jurisdiction." *Greeninger v. Cromwell*, 127 Or App 435, 438, 873 P2d 377 (1994) (citation omitted). "The fact that a court acts in violation of a statute does not mean that the resulting judgment is void." *Geranghadr v. Entagh*, 189 Or App 567, 572, 77 P3d 323 (2003) (citation omitted).

Quantum, however, relies on our opinion in *Cooley v. Fredinburg*, 144 Or App 410, 927 P2d 124 (1996), *modified on other grounds*, 146 Or App 436, 934 P2d 505 (1997), to support its assertion that the lack of notice and opportunity to be heard underlying the award in the default judgment renders it void. In that case, we said:

> "The fact that a court has initial jurisdiction over the parties and the subject matter does not authorize it to act without appropriate notice to the parties. If the proposed order would grant relief different from that contemplated by the original proceeding and would affect a party's personal rights, due process requires that there be reasonable notice and an opportunity to be heard. *Scarth v. Scarth*, 211 Or 121, 126, 315 P2d 141 (1957). If the notice of the proposed relief is so defective or lacking that it does not satisfy the requirements of due process, the court is deprived of jurisdiction to enter an order arising out of such a defective proceeding. *Hood River County v. Dabney*, 246 Or 14, 21, 423 P2d 954 (1967). Such an order, entered without jurisdiction, must be considered a nullity. *State ex rel. v. Hall*, 153 Or 127, 129, 55 P2d 1102 (1936)."

*Cooley*, 144 Or App at 418 (footnote omitted).

Thus, in *Cooley*, we held that a default judgment entered in violation of ORCP 67 C was void *ab initio* because it deprived the defaulted party of due process of law.[2] Plaintiff counters that the facts in this case are different from the

---

[2] ORCP 67 C provides:

"Every judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if such relief has not been demanded in the pleadings, except:

"(1) A judgment by default *shall not be different in kind from or exceed in amount that prayed for in the demand for judgment.* However, a default judgment granting equitable remedies may differ in kind from or exceed in amount that prayed for in the demand for judgment, provided that reasonable notice and opportunity to be heard are given to any party against whom the judgment is to be entered.

facts in *Cooley*. According to plaintiff, "there is no variance between judgment and pleading so extreme as to raise the due process concerns expressed in *Cooley*[.]" He adds:

> "While it may have violated ORCP 67C for the trial court to enter a default judgment for the amounts it did, and while that error might have justified the trial court in vacating the default judgment insofar as it exceeded the amounts specified in the complaint, the inconsistency did not divest the trial court of power to enter a judgment, or make the judgment it did enter a nullity."

This case is like *Cooley* in one major respect. At the time that the proceeding was pending and the default judgment was entered, the trial court had continuing jurisdiction over the parties and the subject matter. However, in *Cooley* the issue was whether the trial court could grant relief beyond what the complaint requested when it ordered a party personally to deliver the surplus proceeds from a foreclosure sale without giving that party notice and an opportunity to appear and be heard. We reasoned that, if notice is defective by reason of its failure to satisfy the requirements of due process, then a trial court lacks jurisdiction to enter a particular order, even though it may have continuing personal and subject matter jurisdiction over the parties. *Cooley*, 144 Or App at 418. Our holding in *Cooley* is an example of where the trial court, although it had continuing jurisdiction, lacked the additional jurisdiction to order a party personally to perform an act without giving that party notice and an opportunity to be heard. Thus, "the question is not strictly one of jurisdiction, but merely the adequacy of notice to warrant the court in exercising the jurisdiction which it has." *Scarth*, 211 Or at 127.

In *Frederick v. Douglas Co. et al.*, 176 Or 54, 63-64, 155 P2d 925 (1945), the court explained the difference between procedural statutes that are directory in nature and procedural statutes that are jurisdictional in nature:

> "In reaching a conclusion as to what statutory provisions are jurisdictional, a distinction may be made between

---

"(2) Where a demand for judgment is for a stated amount of money as damages, *any judgment for money damages shall not exceed that amount.*"
(Emphasis added.)

procedures which are required both by statute and also by the due process clause of the constitution on the one hand, and procedures required by statute alone, over and beyond anything rendered necessary by the constitution, on the other. * * * Those requirements of statute which are essential to due process are, of course, jurisdictional, and we think that statutory requirements over and beyond the bare necessities of due process may also be jurisdictional, but only if it is the legislative intent to make them so."

(Citation omitted.)

Here, the first sentence in ORCP 67 C(1) is arguably essential to due process. A party may be content to permit the relief sought in the complaint served on the party to be granted without contest, but if different relief from that requested in the complaint is sought, then the party is entitled to notice and an opportunity to be heard. But even if an increase in economic damages awarded in a judgment from the amount sought in the complaint does not clearly implicate due process, the remainder of the language in ORCP 67 C(1) makes it apparent that the legislature intended the rule to be jurisdictional in nature. The second sentence of ORCP 67 C(1) provides for an exception to the limitation on the court's authority to grant relief different in kind or in amount from that prayed for in the demand for judgment. However, even the exception expressly requires "that reasonable notice and opportunity to be heard are given to any party against whom the judgment is to be entered." In our view, that language when read with the first sentence of ORCP 67 C(1) makes clear that the legislature intended that notice and the opportunity to be heard are jurisdictional essentials before a party can obtain a judgment greater in amount than that sought in the complaint; that is, the court acquires personal jurisdiction over a nonappearing party only to the extent of the relief requested in the complaint served on the party. We conclude therefore that the trial court was without jurisdiction to enter the default judgment to the extent that the amount of the judgment exceeds the amount prayed for and, to that extent, the judgment is void *ab initio.*[3]

---

[3] We note that the rule that we interpret here, ORCP 67, was derived from the Federal Rules of Civil Procedure. *See State ex rel Zidell v. Jones*, 301 Or 79, 88-89, 720 P2d 350 (1986) (noting that legislative history indicates that ORCP 67 was

■ Having ruled that the judgment is void to the extent it exceeded the amount prayed for, we turn to Quantum's second and third assignments of error with regard to the remaining portion of the judgment. In its second and third assignments of error, Quantum challenges the trial court's ruling that it did not demonstrate excusable neglect regarding its default. If Quantum is correct, then it is entitled to have the default judgment set aside in its entirety. If its argument is not correct, then the trial court on remand should enter an amended judgment reflecting the amount prayed for in the complaint.

■ First, Quantum assigns as error the trial court's denial of its motion to set aside the default judgment on the ground that Quantum established excusable neglect. ORCP 71 B(1)(a). Next, Quantum assigns as error the trial court's finding that "Quantum and Gary O'Connell did not have reason to believe that the HAP was going to defend Quantum in this lawsuit" and asserts that that finding is not supported by the evidence. Because we understand Quantum's second and third assignments of error to raise essentially the same issue, we discuss them together. We review the denial of a motion to set aside a judgment on the basis of ORCP 71 B(1) for abuse of discretion, accepting the trial court's factual findings if they are supported by the evidence. *Wood v. James W. Fowler Co.*, 168 Or App 308, 311-12, 7 P3d 577 (2000); *Adams and Adams*, 149 Or App 342, 346-48, 942 P2d 874 (1997).

derived from the Federal Rules of Civil Procedure); *see also* FRCP 54(c) (providing similar language to ORCP 67 C in that "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment"). The Ninth Circuit has held that a default judgment is void to the extent that it goes beyond the scope of the complaint. *Pueblo Trading Co. v. El Camino Irr. Dist.*, 169 F2d 312 (9th Cir 1948), *cert den*, 335 US 911 (1949); *see also Cooper v. Cooper*, 275 Or 627, 552 P2d 536 (1976). In its analysis of whether the trial court's error was jurisdictional, the Supreme Court indicated the following:

" 'Clearly, a judgment given by a court that has obtained jurisdiction can be considered a nullity only when that jurisdiction has been lost *or exceeded*. If the court in rendering the judgment stays within the powers conferred upon it by law *and does not transcend the jurisdiction it has acquired in the particular case*, its decision, however erroneous, is at most voidable and not for that reason subject to a challenge in an independent proceeding.' "

*Cooper*, 275 Or at 630 (quoting A. C. Freeman, 1 *Freeman on Judgments* § 357, 743-44 (5th ed 1925)) (emphasis added). In the present case, the trial court exceeded its jurisdiction when it awarded damages in excess of the amount prayed for in violation of ORCP 67 C.

■ ■  Before addressing the merits of Quantum's arguments, we first discuss plaintiff's assertion that, because there is no transcript of oral proceedings, the record is inadequate for review with regard to Quantum's second and third assignments of error. We conclude that the assignments are reviewable in light of the record designated by Quantum on appeal. Quantum asserts that all the evidence was presented to the trial court in the form of documents, affidavits, and excerpts of depositions and that that evidence is present in the record before us. Plaintiff argues that "statements of counsel" are necessarily evidentiary in nature, that they are not in the record, and that therefore the record is incomplete without them. However, in *State v. Ordonez-Villanueva*, 138 Or App 236, 244, 908 P2d 333 (1995), *rev den*, 322 Or 644 (1996), we held that "a unilateral assertion of counsel is not evidence, because it is not a medium through which a party can present proof of a fact." (Footnote omitted.) That principle applies here. Based on our understanding that no evidence was taken at the hearing on the motion to set aside the default judgment, we conclude that the record before us is adequate for review.

Under ORCP 71 B(1), a default judgment may be set aside if it was the result of "excusable neglect." The motion must be made "within a reasonable time," and "not more than one year *after receipt of notice* by the moving party of the judgment." *Id.* (emphasis added). The motion must also be accompanied by a pleading or motion under ORCP 21 A that contains an assertion of a claim or defense. Because we agree with the trial court that Quantum has not demonstrated "excusable neglect," we do not discuss plaintiff's other arguments.

The parties dispute whether HAP indicated to Quantum that it would take over the defense on Quantum's behalf. The trial court resolved that factual dispute against Quantum. We are bound by that finding if there is evidence to support it. *Adams*, 149 Or App at 346-48. The trial court based its ruling, in part, on the indemnification clause that required Quantum to "defend and save [HAP] harmless from any and all claims, or liability relating to the management of the premises" and on Meyer's testimony that he anticipated at most a "coordinated" defense between HAP and Quantum.

The trial court therefore necessarily rejected O'Connell's testimony that HAP said that it would take over its defense of the case. Consequently, there is evidence to support the trial court's findings. In light of its findings, the trial court drew the correct legal conclusion that Quantum did not demonstrate excusable neglect. In other words, Quantum was responsible for its own defense unless it demonstrated an agreement for HAP to take over the defense, an agreement that it failed to prove. Thus, the trial court did not abuse its discretion in denying Quantum's motion to set aside the default judgment.

Order denying motion to set aside judgment reversed; remanded with instructions to enter amended judgment in amount of the prayer of plaintiff's complaint.

**DEITS, C. J.,** concurring.

I agree with the majority's disposition of this case and with most of its analysis. The trial court exceeded the extent of its personal jurisdiction over defendant when it entered a default judgment that exceeded the amount of relief sought in the last pleading with which defendant was served. *See* ORCP 9 A ("No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in [ORCP] 7."). I write separately because I do not agree with the majority's reading of ORCP 67 C. Because, in my view, the result does not depend upon the application of the majority's construction of ORCP 67 C, I concur.

The majority concludes that, under ORCP 67 C, notice and an opportunity to be heard are "jurisdictional essentials" that must exist before a party can obtain a default judgment in excess of the amount sought in the complaint. 192 Or App at 416. I agree with the majority insofar as it concludes that a trial court exceeds its jurisdiction when it enters a default judgment that exceeds in amount the prayer for relief in the operative pleading. I also agree that it is likely that the legislature intended ORCP 67 C(1) to embody jurisdictional requirements imposed by due process principles. I disagree only with how the majority construes ORCP 67 C(1) to reach that result.

According to the majority, we can tell that the legislature intended ORCP 67 C(1) to comport with due process by looking at the second sentence of that subsection, which requires " 'that reasonable notice and opportunity to be heard are given to any party against whom the judgment is to be entered.' " 192 Or App at 416 (quoting ORCP 67 C(1)). That clause, however, appears in a sentence that governs only those default judgments granting equitable remedies and, accordingly, does not directly apply in this case.

ORCP 67 C provides, in relevant part:

"Every judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if such relief has not been demanded in the pleadings, except:

"C(1)  A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. However, a default judgment granting equitable remedies may differ in kind from or exceed in amount that prayed for in the demand for judgment, provided that reasonable notice and opportunity to be heard are given to any party against whom the judgment is to be entered."

The first sentence of ORCP 67 C(1) states that default judgments shall not be different in kind or exceed in amount what was prayed for. The second sentence is an exception: a default judgment *granting equitable remedies* may be different in kind or exceed in amount what was prayed for *if* proper notice and an opportunity to be heard are given. The majority reasons that the legislature intended notice and opportunity to be heard to be required *whenever* a judgment is to exceed the amount prayed for. 192 Or App at 416. It seems much more likely that the legislature intended that requirement to apply only to cases involving equitable relief; otherwise it would not have phrased ORCP 67 C(1) as a general rule followed by an exception, but rather would have said that *any* default judgment can differ in kind or exceed in amount what was sought if proper notice and an opportunity to be heard are given.

In my view, the legislature clearly indicated in ORCP 67 C(1) that, consistently with due process, a judgment granting only legal relief may not exceed the amount

sought in the prayer. Consequently, I agree with the majority that the trial court lacked jurisdiction to enter the default judgment to the extent that it exceeded the amount sought in plaintiff's amended complaint. I do not agree that, under the plain language of ORCP 67 C(1), a default judgment granting only legal relief may exceed the amount sought if proper notice and an opportunity to be heard are given. However, that is not a question we need to decide in this case.

For the reasons stated above, I concur.