No. 33              July 25, 2013              849

IN THE SUPREME COURT OF
THE STATE OF OREGON

PORTLAND GENERAL ELECTRIC COMPANY,
an Oregon corporation,
*Plaintiff-Respondent*,
*Petitioner on Review*,

*v.*

EBASCO SERVICES, INC.,
fka Esicorp, Inc.; et al.,
*Defendants*,
*and*

LEXINGTON INSURANCE COMPANY,
*Defendant-Appellant*,
*Respondent on Review.*

EECI, INC.,
a Nevada corporation,
*Third-Party Plaintiff,*

*v.*

GENERAL ELECTRIC COMPANY,
a New York Corporation; et al.,
*Third-Party Defendants.*

(CC CV05120776; CA A143752; SC S060584)

En Banc

On review from the Court of Appeals.*

Argued and submitted April 29, 2013.

Brian R. Talcott, Dunn Carney Allen Higgins and Tongue, LLP, Portland, argued the cause for petitioner on review. With him on the brief were Thomas H. Tongue and Bridget D. Lynn.

David M. Axelrad, Horitz & Levy LLP, Encino, California, argued the cause for respondent on review. On the brief were

_____
   * Appeal from Clackamas County Circuit Court, Robert D. Herndon, Judge. 248 Or App 91, 273 P3d 165 (2012)

Stephen F. Deatherage and Daniel F. McNeil, Bullivant Houser Bailey, PC, Portland.

BREWER, J.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

**BREWER, J.**

Plaintiff Portland General Electric Company (PGE) seeks review of a Court of Appeals decision that reversed and remanded a trial court order denying defendant Lexington Insurance Company's motion under ORCP 71 to set aside a default judgment entered against it in PGE's favor, on the ground that the trial court lacked jurisdiction to enter the default judgment. On review, the issues are (1) whether a default judgment awarding monetary relief violates ORCP 67 C if the underlying complaint did not state the specific amount of money or damages being sought; and (2) if so, whether such a defect renders the judgment merely voidable and therefore not subject to collateral attack or, instead, renders the judgment void and therefore subject to challenge at any time. We conclude that the default judgment did violate ORCP 67 C in the asserted respect. However, we also conclude that, in the circumstances of this case, the rule violation did not render the judgment void. Accordingly, we reverse the decision of the Court of Appeals and remand to that court for further proceedings.

The pertinent facts are procedural and not in dispute. A former employee of PGE brought a personal-injury action against PGE based on asbestos exposure. In December 2005, after settling that action, PGE sued certain insurers that had issued insurance policies to PGE for the period during which the exposure had occurred. In its complaint, PGE alleged that it had entered into a confidential settlement agreement in the underlying asbestos personal injury case; that it had tendered its claims to its insurers; that it had fulfilled its obligations under the policies or was excused from any such obligations; that the policies provided coverage for the claims resulting in the settlement; and that PGE's insurers had breached the insurance contracts by failing to indemnify PGE for the settlement. In the prayer of the com-plaint, PGE sought a judgment providing that the insurers were "liable to reimburse [PGE] regarding the settlement of the underlying lawsuit." Lexington was one of the insurers, and it was a party to a policy providing coverage not to exceed $5 million. Because it had only a 16-percent share in that policy, Lexington had a maximum exposure of $800,000.

However, PGE did not allege any specific amount of monetary loss or damages that resulted from Lexington's breach of its indemnity obligation. Although a copy of the pertinent insurance policy was attached to the complaint as an exhibit, PGE did not allege that it was seeking damages equivalent to the liability limit under that policy. Moreover, PGE's complaint did not specify the amount of money for which PGE had settled the underlying asbestos-exposure litigation, stating instead that the settlement amount had been "reasonable."

In 2006, PGE served the complaint on a New York law firm specified in the policy as an authorized agent for service of process on the subscribing insurers. That firm forwarded the complaint to another law firm, which filed an answer on behalf of other insurers but not on behalf of Lexington, because it did not represent Lexington. All the other solvent insurer defendants appeared and defended, but Lexington did not.

About three years after PGE filed its original complaint, it moved for an order of default and for a limited judgment of default against Lexington for $800,000, plus costs and attorney fees. That motion was served on the firm that represented the other subscribing insurers, but it was not served on Lexington.[1] The motion included a declaration that PGE's loss in the underlying personal-injury action exceeded "the $800,000 policy limit provided by Lexington." In January 2009, the trial court granted PGE's motion and entered an order of default and limited judgment on default against Lexington for $800,000, plus $26,865 in costs and attorney fees. Lexington learned of the default judgment almost immediately, and it retained counsel to review the matter.

Lexington did not appeal the judgment. Rather, it brought a collateral challenge to it. In July 2009, Lexington filed a motion to set aside the default judgment under ORCP 71. In that motion, Lexington sought relief solely on the grounds of its asserted excusable neglect in failing to appear

---

[1] PGE was not required to serve Lexington with its motion for default under ORCP 69, nor was it required to provide notice to Lexington under ORCP 69 B(2), because Lexington had filed neither an appearance nor written notice of intent to file an appearance.

and the trial court's "inherent discretion." The trial court concluded that Lexington had failed to provide a reasonable explanation for its failure to appear and, accordingly, denied the motion. The court later entered a supplemental judgment awarding PGE additional costs and attorney fees.

Lexington appealed both the supplemental judgment and the order denying its motion to set aside the limited judgment of default. On appeal, Lexington asserted for the first time that the trial court had lacked jurisdiction to enter the default judgment awarding monetary relief on the ground that PGE had failed to comply with ORCP 67 C.[2] Lexington argued that, because PGE had not demanded a specific amount of monetary relief in its complaint, the default judgment awarded an amount "exceeding the amount prayed for in the pleadings." In Lexington's view, that defect rendered the entire judgment void.[3] PGE responded that the complaint had provided Lexington with "all of the information necessary to allow it to understand the claim being asserted and to assess its risk of not appearing." In particular, PGE relied on the complaint's allegation that the subscribing insurers had breached a specific $5 million insurance policy—attached as an exhibit to the complaint— that outlined Lexington's 16-percent share and $800,000 exposure limit.

The Court of Appeals concluded that the default judgment was void because PGE had failed to state a specific amount of damages in its complaint. *PGE v. Ebasco Services, Inc.*, 248 Or App 91, 100-01, 273 P3d 165 (2012). Relying on its prior decision in *Montoya v. Housing Authority of Portland*,

---

[2] ORCP 67 C provides:

"Every judgment shall grant the relief to which the party in whose favor it is rendered is entitled. A judgment for relief different in kind from or exceeding the amount prayed for in the pleadings may not be rendered unless reasonable notice and opportunity to be heard are given to any party against whom the judgment is to be entered."

[3] Lexington also argued on appeal that (1) the trial court had lacked jurisdiction to enter the default judgment because PGE had filed an amended complaint seeking additional relief in the form of attorney fees, and it never served Lexington with the amended complaint; and (2) the trial court had erred in denying Lexington's motion to set aside the default judgment on the ground of excusable neglect. Because it deemed Lexington's unpreserved jurisdictional challenge to be dispositive, the Court of Appeals did not address Lexington's alternative arguments.

192 Or App 408, 416, 86 P3d 80 (2004), the court concluded that ORCP 67 C imposes a jurisdictional requirement, such that a trial court lacks jurisdiction to enter a default judgment in any amount where the underlying complaint failed to specify the amount of monetary relief sought. *Ebasco Services*, 248 Or App at 100. In *Montoya*, the Court of Appeals had considered whether a default judgment was void for lack of jurisdiction because, in violation of ORCP 67 C, the amount of damages awarded exceeded the amount pleaded. In concluding that the rule had been violated and that the defect was jurisdictional, the court explained:

> "'In reaching a conclusion as to what statutory provisions are jurisdictional, a distinction may be made between procedures which are required both by statute and also by the due process clause of the constitution on the one hand, and procedures required by statute alone, over and beyond anything rendered necessary by the constitution, on the other. *** Those requirements of statute which are essential to due process are, of course, jurisdictional, and we think that statutory requirements over and beyond the bare necessities of due process may also be jurisdictional, but only if it is the legislative intent to make them so.'"

192 Or App at 415-16 (quoting *Frederick v. Douglas Co. et al.*, 176 Or 54, 63-64, 155 P2d 925 (1945)). The court reasoned that ORCP 67 C is jurisdictional because awarding more than the amount prayed for by default without notice and the opportunity to be heard is the functional equivalent of taking a default judgment on a complaint without service of process. *Id.* at 416. Thus, the court held that the default judgment was void to the extent that it awarded monetary relief exceeding the amount prayed for in the complaint. *Id.*

In this case, the Court of Appeals extended its reasoning in *Montoya* to the circumstance where PGE's complaint had not provided Lexington with notice "that [PGE] sought to recover any particular amount in damages from [Lexington]." *Ebasco Services*, 248 Or App at 100. The court concluded that the insurance policy attached to the complaint did not cure the posited defect because the complaint did not otherwise state that PGE sought the maximum amount allowed under the policy or indicate that the underlying asbestos-exposure case had been settled for more than

that amount. *Id*. The court ultimately concluded that the default judgment was void, and it directed the trial court on remand to vacate the default order; the court also vacated the supplemental judgment awarding attorney fees, costs, and disbursements. *Id*. at 100-01. PGE petitioned for reconsideration, arguing that the default judgment should be left intact insofar as it adjudged Lexington liable for breach of contract. The Court of Appeals denied reconsideration.

On review, PGE asserts that ORCP 67 C imposes procedural requirements that do not implicate a trial court's jurisdiction and, accordingly, that the Court of Appeals erred in concluding that the default judgment was void. PGE urges that entry of the default judgment in this case was consistent with due process because the underlying complaint had adequately informed Lexington of the nature of the claim and the amounts potentially at issue. Finally, PGE asserts that, in any event, the default judgment should not be deemed void as to its adjudication of Lexington's liability for breach of contract because, in that respect, the judgment did not differ from the relief sought in the complaint.

Lexington responds that the Court of Appeals decision in *Montoya* was correct and that the result reached in this case flows logically from that analysis. Lexington observes that this court has stated that a trial court lacks jurisdiction to adjudicate a matter where notice to the defendant "is so defective that it does not satisfy the requirement of due process." *Hood River County v. Dabney*, 246 Or 14, 21, 423 P2d 954 (1967). According to Lexington, fundamental principles of due process required PGE to give notice in its complaint of the amount of monetary relief that it sought, so that Lexington could make an informed decision whether to incur the expense of defending against the action. Because the complaint failed to give such notice, Lexington asserts that entry of the default judgment violated its due process rights and deprived the trial court of jurisdiction to enter a default judgment. Moreover, Lexington argues that the posited defect necessarily infected the entire default judgment, rendering it void.

We begin our analysis by noting what is not in dispute on review: the trial court had subject matter jurisdiction in this action and, because Lexington was properly served

with summons and the original complaint,[4] the court also had personal jurisdiction over Lexington. *See School Dist. No. 1, Mult. Co. v. Nilsen*, 262 Or 559, 566, 499 P2d 1309 (1972) (holding that an Oregon court has subject matter jurisdiction over an action if constitution, statute, or common law tells court to do something about specific kind of dispute presented); *Woods v. Carl Karcher Enterprises, Inc.*, 341 Or 549, 556-57, 146 P3d 319 (2006) (service of summons and complaint gives "the court personal jurisdiction over the defendant, imposing on the defendant a number of immediate obligations (such as filing an appearance and responding to the complaint) and a host of potentially adverse consequences"). Generally speaking, when a trial court has both subject matter jurisdiction and personal jurisdiction, its judgment, even if erroneous, is not void. *State ex rel English v. Multnomah County*, 348 Or 417, 440, 238 P3d 980 (2010); *State v. McDonnell*, 343 Or 557, 563, 176 P3d 1236 (2007).

In *McDonnell*, we explained that a void judgment is one that "has no legal force or effect" and can be attacked "at any time and any place, whether directly or collaterally"; a voidable judgment, in contrast, is one that "is irregular or erroneous" although it is "rendered by a court having jurisdiction." 343 Or at 562 (quoting *Black's Law Dictionary* 861 (8th ed 2004)). A voidable judgment may be attacked through only a direct appeal or a cognizable collateral challenge, for example, under ORCP 71 B.[5] *See Ketcham v. Selles*, 304 Or 529, 534-35, 748 P2d 67 (1987) (purported default judgment that did not qualify as judgment because it did not resolve all issues among all parties was voidable, not void, and could not be collaterally attacked in a proceeding to execute judgment); *see also Johnson v. Johnson*, 302 Or 382, 394, 730 P2d 1221 (1986) (entertaining, albeit denying on merits, collateral challenge to dissolution judgment on ground of extrinsic fraud under ORCP 71 C). Congruently with that distinction, principles relating to preservation of error do not

---

[4] As noted, PGE properly served the agent whom Lexington had identified in the insurance policy.

[5] ORCP 71 (B)(1) provides, in part, that "the court may relieve a party or such party's legal representative from a judgment for *** (a) mistake, inadvertence, surprise, or excusable neglect[.]"

apply to void judgments; those principles do, however, apply to the assertion of error with respect to judgments that are merely voidable. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 383, 823 P2d 956 (1991).

With that background in mind, we turn to the question whether the default judgment in this case violated ORCP 67 C. We begin with the text of ORCP 67 C itself, which provides:

> "Every judgment shall grant the relief to which the party in whose favor it is rendered is entitled. A judgment for relief different in kind from or exceeding the amount prayed for in the pleadings may not be rendered unless reasonable notice and opportunity to be heard are given to any party against whom the judgment is to be entered."

ORCP 18 B, which sets out the pleading rule that ORCP 67 C reinforces, requires that a complaint contain "[a] demand of the relief which the party claims" and, "if recovery of money or damages is demanded, the amount thereof shall be stated."[6] PGE concedes that its claim for breach of contract sought recovery of money or damages for purposes of both the ORCP 18 B requirement that an amount be pleaded and the ORCP 67 C prohibition against a judgment exceeding the amount prayed for in the complaint. PGE does not, however, concede that the default judgment violated ORCP 67 C.[7] Accordingly, we briefly turn to that issue.

As discussed, the claim in question was for breach of an insurance contract, seeking monetary relief from Lexington in the unspecified amount of the settlement that PGE had paid in the underlying asbestos-exposure personal

---

[6] The original staff comment to ORCP 67 C demonstrates the connection between the two rules:

> "In a case where money damages are claimed, the damages recoverable are limited to the prayer. Note that ORCP 18 B requires a statement in the prayer of the amount of damages claimed."

Fredric R. Merrill, *Oregon Rules of Civil Procedure: 1984 Handbook* 154 (staff comment).

[7] In a footnote in its brief on review, PGE suggests that it is "questionable" whether the default judgment implicated ORCP 67 C because the complaint did not seek *any* specific amount of money or damages. Because PGE has not developed any argument pertaining to that suggestion, we do not consider it further.

injury case, together with associated costs and attorney fees. PGE notes that the complaint incorporated the pertinent insurance policy as an exhibit, and the policy reflected that Lexington's pro rata share of the policy limits was 16 percent of $5 million, or $800,000. Based on those references, PGE asserts that the complaint sufficiently stated the amount of monetary relief that PGE sought. We disagree.

The fact that—albeit inartfully—the complaint implicitly might have capped PGE's primary damages at Lexington's pro rata share of the policy limits, is not the same as stating the amount of money or damages demanded. In fact, the complaint did not demand money or damages in the amount of $800,000 or, as required by ORCP 18 B, in any stated amount. Accordingly, we conclude that the default judgment violated ORCP 67 C because the complaint did not seek any amount of damages.

The greater challenge is to determine the effect of that violation in the circumstances of this collateral attack on the default judgment. Both before and after the adoption of the Oregon Rules of Civil Procedure, this court generally has treated erroneously entered judgments as voidable, rather than void. For example, in *Travelers Insurance Co. v. Staiger*, 157 Or 143, 69 P2d 1069 (1937)—an action to recover on a promissory note—the plaintiff obtained a judgment against the defendants that included certain amounts for costs and disbursements, and the defendants did not timely appeal. *Id.* at 146. Subsequent enforcement of the judgment resulted in the sale of the defendants' property. *Id.* The defendants objected to the sale, arguing that the judgment was void because it had awarded costs and disbursements when no cost bill had ever been filed, in violation of the cost bill provisions of the 1930 Oregon Code. *Id.* at 146-47. The trial court overruled the defendants' objections, and the defendants appealed. *Id.* at 147. This court acknowledged that the trial court might have erred in awarding costs and disbursements without the required cost bill, but nonetheless affirmed, stating:

"If the relief awarded or recovery authorized by a judgment is excessive, either as being greater than the amount demanded, greater than the facts or the evidence would justify, or as improperly including interest, costs, or counsel

fees[,] \*\*\* it is erroneous and voidable, but may not be impeached in a collateral proceeding."

*Id.* at 148 (quoting 34 CJ, Judgments, 564 § 864).

Similarly, in *Rajneesh Foundation Intl. v. McGeer*, 303 Or 139, 144 n 3, 734 P2d 871, *adhered to on recons*, 303 Or 371, 737 P2d 593 (1987), this court concluded that a default judgment was not subject to collateral attack on the ground that the pleadings were insufficient to support it. *See also Rogue Val. Mem. Hosp. v. Salem Ins.*, 265 Or 603, 615, 510 P2d 845 (1973) (judgment based on hospital lien not filed within specified statutory period not subject to collateral attack); *Walling v. Lebb*, 140 Or 691, 692, 15 P2d 370 (1932) (failure of complaint to state claim does not subject subsequent judgment to collateral attack); *cf. Booth v. Heberlie*, 137 Or 354, 356, 2 P2d 1108 (1931) (judgment entered prematurely "could be attacked only by motion in the original case").

As noted, those decisions confirm that, generally speaking, when a trial court has both subject matter jurisdiction and personal jurisdiction, its judgment, even if erroneous, is not void. *State ex rel English*, 348 Or at 440; *McDonnell*, 343 Or at 563. To be sure, that conclusion is a qualified one. First, in certain circumstances, it is necessary to construe a statute to determine whether the legislature intended to impose a limitation on the trial court's authority to exercise its jurisdiction. In that instance, a violation of the statute may render the judgment void. For example, in *Dabney*, the issue was whether a tax lien foreclosure statute requiring 60-days' notice before foreclosure imposed such a limitation on the trial court's power. 246 Or at 21-22. After examining the statute's text and context, this court concluded that the legislature did not intend the notice requirement to limit the court's authority to exercise its jurisdiction, thereby resulting in a void judgment. *Id.*

ORCP 67 C is a rule of civil procedure promulgated by the statutorily created Council on Court Procedures. ORCP 1.735(1). Applying the precepts that ordinarily apply

to the interpretation of statutes, the interpretation of such a rule requires a determination of the Council's intent. *A. G. v. Guitron*, 351 Or 465, 479, 268 P3d 589 (2011).[8] There is no indication in ORCP 67 or any other provision of the Oregon Rules of Civil Procedure that the Council intended that a violation of the rule would render an ensuing default judgment "void" or otherwise deprive the court of authority to exercise its jurisdiction in the absence of a constitutional violation. *See Dabney*, 246 Or at 22 (concluding that, absent due process violation, there was no indication that legislature intended violation of statutory notice requirement to result in void judgment); *see also Rogue Val. Mem. Hosp.*, 265 Or at 616 (1973) (concluding that, in the absence of a "clear indication" that the legislature intended for statutory time provisions for filing a lien to impose "jurisdictional" requirements, court would infer that a judgment based upon such a lien is voidable, not void).

Second, a statutory violation that also deprives a party of due process may render a judgment void. As explained below, however, the default judgment in this case does not implicate concerns of constitutional dimension.

As dictated by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, it is well established that the state may not deprive a person of life, liberty, or property without "notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Tr. Co.*, 339 US 306, 313, 70 S Ct 652, 94 L Ed 865 (1950); *Koskela v. Willamette Industries, Inc.*, 331 Or 362, 378, 15 P3d 548 (2000). An appropriate hearing is one that is provided "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 US 545, 552, 85 S Ct 1187, 14 L Ed 2d 62 (1965); *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 189-90, 796 P2d 1193 (1990).

---

[8] An exception exists for situations where the legislature "amended the rule at issue in a particular case in a manner that affects the issues in that case." *Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 382 n 2, 8 P3d 200 (2000), *adhered to on recons*, 331 Or 595, 18 P3d 1096 (2001). Here, ORCP 67 C was promulgated by the Council on Court Procedures in 1980. *See* Merrill, Oregon Rules of Civil Procedure: 1984 Handbook 156. Although it has been amended by the Council on Court Procedures, it has not been the subject of legislative amendment, nor have any amendments materially changed the text at issue in this case.

This court has previously recognized that, even where a trial court has personal and subject matter jurisdiction, a violation of due process notice requirements may deprive the court of "jurisdiction" to enter an order or judgment. *State ex rel Hall v. Hall*, 153 Or 127, 55 P2d 1102 (1936) (stating that, in the absence of notice, the trial court lacked jurisdiction to modify an order addressing support provisions of a divorce decree). Used in that way, the word "jurisdiction" is a term of art intended to convey that the violation was so significant as to render the resulting judgment void. But not every defect in notice renders a judgment void. Instead, it is only when the notice "is so defective that it does not satisfy the requirements of due process" that the court does not have authority to enter a judgment. *Dabney*, 246 Or at 21. That is, due process requires reasonable notice to a defendant before a default judgment or order may be entered against it, but not necessarily strict compliance with the applicable procedural statutes and rules. *See Restatement (Second) of Judgments* § 2 cmt e (1982) ("A notice-giving effort may comply with Constitutional requirements under the Due Process Clause and yet fail to comply with the requirements of an applicable statute or rule of court.").

*Dabney*, which was an action to quiet title to land, illustrates the point. There, the county acquired title to land from the defendant's predecessor in interest through a tax foreclosure proceeding in 1928. The published summons in the foreclosure proceeding had been defective because it afforded the landowner only six weeks in which to appear, rather than the 60 days required by statute. In 1963, the defendant learned of that defect and challenged the plaintiff's title. 246 Or at 17. The issue on appeal was whether that challenge was barred by ORS 312.220, which provided that a decree of foreclosure for delinquent taxes "is conclusive evidence of its regularity and validity in all collateral proceedings," and ORS 312.230, which barred any action challenging a tax foreclosure decree, unless it was commenced within specified time limits. Applying those statutes, the court stated that "the decree must be regarded as valid unless on constitutional grounds we must hold that the legislature lacks the power to declare valid a tax

foreclosure decree defective for lack of jurisdiction." 246 Or at 20.

The court in *Dabney* revisited prior decisions in which it had held that the legislature could enact statutes barring challenges to tax foreclosure decrees that were merely irregular due to "nonjurisdictional" defects, but could not so insulate decrees that were void for lack of "jurisdiction." *Id.* at 20-21. The court reexamined those cases and, after discerning a legislative purpose to strictly limit challenges to tax foreclosures, held that all defects in the underlying tax foreclosure proceedings were "nonjurisdictional" unless they deprived the taxpayer of due process. *Id.* at 22. The court also held that the notice that the owner had received, although insufficient to comply with the tax foreclosure statutes, was sufficient to satisfy the demands of due process. *Id.* at 25-26. Because there was no due process violation, the court concluded that the statutes of limitation barred the defendant's challenge. *Id.*[9]

This court's decision in *Scarth v. Scarth*, 211 Or 121, 315 P2d 141 (1957), illustrates a circumstance in which the failure to comply with a statutory notice requirement did result in a due process violation and a void judgment. In that case, the trial court modified without notice the defendant's child support obligation. The defendant appealed, "contending that the court had no jurisdiction of him in that he had no proper notice or opportunity to be heard, amounting to a denial of due process of law." *Id.* at 125. This court noted that, based on the applicable statute, the trial court had continuing personal and subject matter jurisdiction relating to the

---

[9] The court, however, chose to broaden the basis of its decision:

"Although we could rest our decision solely upon the ground that the defect in the summons was nonjurisdictional and that, therefore the foreclosure decree is free from collateral attack, in the interest of carrying out the clearly indicated legislative purpose to give the 'utmost stability' to tax titles we prefer to rest our decision upon the broader ground that even if the defect in the proceedings is jurisdictional for failure to meet either legislative or constitutional requirement deemed essential to jurisdiction, it was within the purpose and power of the legislature in enacting ORS 312.220 and ORS 312.230 to bar the delinquent owner from attacking the foreclosure decree."

246 Or at 26. The breadth of the court's ultimate holding in that case does not detract from our reliance here on its initial conclusion, which was a foundational holding of the case.

defendant's support obligations and that the court retained the power to modify that portion of the original judgment. *Id.* However, this court held that the retention of such jurisdiction did not mean that the court could act without further notice to the defendant. *Id.* at 126. Because the modification order affected the defendant's personal rights, due process entitled him to reasonable notice and an opportunity to be heard. *Id.* In so concluding, this court relied in part on *Hall*, in which the court had held that an order modifying the support provisions of a divorce decree entered without notice to the defendant was an insufficient foundation for a subsequent judgment of contempt. Similarly, the court relied on *Griffin v. Griffin*, 327 US 220, 66 S Ct 556, 90 L Ed 635 (1946), in which the United States Supreme Court had held that "an order docketing arrears of alimony as a judgment, without notice to the defendant, was held wanting in due process." *Scarth*, 211 Or at 126. In relying on those decisions, this court in *Scarth* clarified the relationship between due process requirements and a court's retention of ongoing jurisdiction over the defendant:

> "In both the *Hall* case and the *Griffin* case, *** it was said that in the absence of notice the court had no *jurisdiction* to make the order. But since the required notice may be something less than would be needed to give personal jurisdiction at the commencement of the suit, the question is not strictly one of jurisdiction but merely the adequacy of notice to warrant the court in exercising the jurisdiction which it has."

211 Or at 127 (emphasis in original; internal citations and footnote omitted).

        With reference to the general notice problem presented in this case, cases decided under the parallel federal rule, FRCP 54(c)[10]—and comparable state rules of civil procedure—have held that, when a complaint demands a specific amount of damages, due process prohibits a default judgment from awarding additional damages. *See, e.g., Compton v. Alton Steamship Co.*, 608 F2d 96, 104 (4th Cir 1979); *Producers Equip. Sales, Inc. v. Thomason*, 15 Kan App 2d 393, 399, 808 P2d 881 (1991). The same is true

---

[10] FRCP 54(c) provides, in pertinent part, that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

when a default judgment awards a different type of relief than that sought in the claimant's operative pleading. The rationale for those decisions is that, insofar as due process is concerned, a default judgment cannot (1) award monetary relief that is greater than the specific amount pleaded; or (2) provide other relief that is different in kind from the relief sought in the pleadings, because the defendant could not reasonably have expected that its exposure to liability would exceed that amount or be different in kind. The leading commentators on the federal rule have explained the "theory of this provision" as follows:

> "[T]he defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award."

Charles Alan Wright, Arthur R. Miller, and Mary Kay Marie Kane, 10 *Federal Practice and Procedure: Civil* § 2663 (3d ed 2008) (footnote omitted).

In this case, by contrast, those concerns are not implicated. First, Lexington does not assert that the default judgment awarded a *different kind of relief* than was sought in the complaint in this case. In its complaint, PGE sought indemnity for the amount that it paid to settle the underlying asbestos claim and for its costs and attorney fees in defending that claim. The default judgment awarded precisely that relief. Instead, the sole focus of Lexington's due process argument is on the *amount* of monetary relief that the default judgment awarded. However, the defect in notice concerning the amount of PGE's claimed damages was apparent on the face of the complaint when Lexington was served with a copy of it and the required summons. Multiple prejudgment options to remedy that defect were at Lexington's disposal. For example, Lexington could have moved to make the complaint more definite and certain

pursuant to ORCP 21 D. Alternatively, if it thought that the defect was so egregious as to constitute a failure to state facts sufficient to constitute a claim for relief, Lexington could have moved to dismiss on that ground pursuant to ORCP 21 A(8).[11] Yet it took neither action.

In these circumstances, Lexington's challenge comes too late. Unlike a case in which a variance exists between the amount of damages sought in a complaint and the amount of a subsequent default judgment, or in which a post-judgment modification of an existing obligation is obtained without notice to the obligor, Lexington had multiple prejudgment opportunities over a period of years to challenge the very defect that it failed to raise before filing the present appeal. That is, the defect that ultimately triggered a violation of ORCP 67 C in this case was the predicate violation of ORCP 18 B based on PGE's failure to state the amount of monetary relief that it sought in its complaint. Service of the complaint itself provided Lexington with notice of that defect, and the Oregon Rules of Civil Procedure provided it with ample opportunities for a predefault hearing at a meaningful time and in a meaningful manner.

Stated differently, the complaint in this case could not have led Lexington to believe that "only a certain type and dimension of relief was being sought," so that it could "attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting." Wright, Miller, & Kane, 10 *Federal Practice and Procedure* § 2663. In such circumstances, due process does not demand the nullification of the default judgment by means of a collateral challenge. It follows that the Court of Appeals erred in concluding otherwise. Accordingly, it is necessary to remand the case to that court to address Lexington's remaining arguments that the default judgment is void because PGE filed an amended complaint seeking additional relief in the form of attorney fees but never served Lexington with that pleading or, alternatively, that the trial court erred in denying Lexington's

---

[11] Although not pertinent to the adequacy of prejudgment notice, we note that Lexington also did not move to set aside the judgment under ORCP 71 on the ground of surprise. *See* ORCP 71 B(1) (providing, in part that "the court may relieve a party or such party's legal representative from a judgment for * * * (a) mistake, inadvertence, *surprise*, or excusable neglect" (emphasis added)).

motion to set aside the default judgment on the ground of excusable neglect.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.