Argued and submitted November 29, 2018, reversed and remanded
February 3, 2021

Rana KIRRESH,
*Plaintiff-Respondent,*

*v.*

Cecil C. GILL, and all others,
*Defendant-Appellant.*

Washington County Circuit Court
17LT05581; A165117

482 P3d 76

Defendant appeals a judgment of restitution entered in plaintiff's favor in a residential forcible entry and detainer action. The trial court awarded that judgment primarily on the basis of a prior default judgment that resulted in declarations that defendant had entered into the functional equivalent of a land sale contract with plaintiff's predecessor-in-interest, plaintiff had a superior interest to defendant in the disputed property, and plaintiff was entitled to pursue a forfeiture remedy to recover the property. On appeal, defendant argues that the prior judgment did not entitle plaintiff to the forfeiture remedy, and, even if there was an enforceable land sale contract at issue, it did not provide for a forfeiture remedy as the governing statutes contemplate. Plaintiff argues that defendant is precluded from making those arguments because he had the opportunity to litigate them in the prior proceeding. Alternatively, plaintiff argues that she satisfied the statutory requirements for forfeiture because the remedy of forfeiture arises from a land sale contract as a matter of law. *Held*: The trial court erred. Defendant's arguments were not precluded because the portion of the prior judgment that awarded plaintiff the right to forfeiture was void for due process reasons. Additionally, a forfeiture remedy did not arise as a matter of law from the land sale contract at issue.

Reversed and remanded.

Beth L. Roberts, Judge.

Timothy R. Volpert argued the cause for appellant. Also on the briefs was Tim Volpert P.C.

William E. Gaar argued the cause for respondent. Also on the brief were Richard A. Uffelman, Jillian Pollock, and Buckley Law, P.C.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.*

_____

* DeVore, J., *vice* Hadlock, J. pro tempore.

DeHOOG, P. J.

Reversed and remanded.

**DeHOOG, P. J.**

Defendant appeals a judgment of restitution entered in plaintiff's favor in a residential forcible entry and detainer (FED) action. The trial court awarded that judgment primarily on the basis of an earlier proceeding, which had resulted in declarations that (1) defendant had entered into the "functional equivalent of a land sale contract" with plaintiff's predecessor-in-interest; (2) plaintiff's interest in the property was superior to defendant's; and (3) plaintiff was "entitled to pursue a forfeiture remedy under ORS 93.905 through ORS 93.940 to recover" the property at issue. Plaintiff then "pursued" forfeiture by issuing a notice of default and opportunity to cure, and, when defendant did not cure the claimed default, plaintiff recorded an affidavit of forfeiture. Finally, plaintiff initiated the present FED action, which resulted in the judgment of restitution now on appeal.

On appeal, defendant argues that the earlier declaratory judgment merely recognized plaintiff's right to *seek* forfeiture; the judgment did not, defendant argues, *entitle* plaintiff to that remedy. And, in defendant's view, plaintiff was not entitled to forfeiture, because, even if there was an enforceable land sale contract defining the parties' respective rights, it did not provide for a forfeiture remedy, as the governing statutes contemplate. Plaintiff responds that defendant's arguments are precluded because he had the opportunity to litigate the availability of a forfeiture remedy in the first proceeding. Plaintiff argues in the alternative that she satisfied the statutory requirements for forfeiture. We conclude that defendant's arguments are not precluded, and that plaintiff has not satisfied the statutory requirements for forfeiture. Accordingly, we reverse and remand.

Because she prevailed at trial, we view the facts in the light most favorable to plaintiff. *Harvey v. Davis*, 276 Or App 680, 681, 371 P3d 1208, *rev den*, 360 Or 604 (2016) (applying that standard in appeal of judgment of restitution based on a land sale contract's forfeiture provision).

In July 2009, plaintiff's then husband, MacBale, and defendant entered into a "Residential Purchase and Sale Agreement and Receipt for Earnest Money" (sale

agreement) for defendant's purchase of the property at issue in this case. Defendant also executed a promissory note in MacBale's favor at that time. The sale agreement provided for a total purchase price of $310,000 and required defendant to make monthly payments of no less than $1,292 beginning on July 15, 2009, with the entire amount due on or before June 15, 2019.

In 2013, plaintiff divorced MacBale and became his successor in interest as to both the sale agreement and the promissory note, which were awarded to her in the dissolution proceedings. Defendant failed to make the required payments between June 15 and September 15, 2015. As a result, plaintiff filed a complaint against defendant alleging breach of contract and seeking declaratory relief. Plaintiff specifically sought declarations that: (1) the agreement and note, together, were "akin to a land sale contract" for the property; (2) defendant had an equitable interest in the property; (3) plaintiff had an equitable lien against the property; and (4) "Plaintiff's equitable lien against the Property *may be foreclosed*." (Emphasis added.) Despite being served with a summons and a copy of the complaint, defendant did not appear in response, and plaintiff ultimately obtained a default judgment. Plaintiff's motion for default in that 2015 proceeding purported to request "a judgment allowing the relief sought in the complaint" but did not specifically mention a right to foreclosure as alleged in the complaint. Rather, in relevant part, the motion sought a declaration that "Plaintiff's interest in the Property is superior to any interest, lien, right, title or claim of the Defendant in the Property," and further requested allowance of "the relief sought in the complaint" by "[g]ranting Plaintiff the right to cancel the Note and Sale Agreement, declare Defendant's rights under this Note and Sale Agreement to be *forfeited*, extinguish the debt, and retain sums previously paid under this Contract by Defendant, in the manner provided in ORS 93.905 to ORS 93.940." (Emphasis added.) Plaintiff's motion for entry of a limited judgment by default certified that she had served it on defendant. In December 2015, the trial court found defendant in default and entered the requested limited judgment (the 2015 judgment). In addition to describing the property subject to its terms, the

2015 judgment contained the declarations sought in plaintiff's motion, including a specific declaration as follows: "5. Plaintiff is entitled to pursue a forfeiture remedy under ORS 93.905 through ORS 93.940 to recover the Property[.]"

Defendant did not appeal that judgment.[1] In January 2017, plaintiff served defendant with notice of his default under the sale agreement and of impending forfeiture. The notice stated that the "default by virtue of which this forfeiture is declared is for failure to make timely payments at such time and in such amounts as required under the Note and Agreement." The notice further explained that a "forfeiture is proper under the Note and Agreement because, by [the 2015] judgment *** the Note and Agreement together have been adjudged to be the functional equivalent of a land sale contract." Lastly, the notice informed defendant that the "contract will be forfeited if the default is not cured by March 21, 2017."

Defendant did not timely cure his default, and plaintiff filed an affidavit of forfeiture on March 22, 2017. *See* ORS 93.930(1) ("When a contract for conveyance of real property has been forfeited in accordance with its terms after the seller has given notice to the purchaser *** the seller shall record an affidavit *** setting forth that the default of the purchaser under the terms of the contract was not cured *** and that the contract has been forfeited."). Plaintiff's affidavit asserted that, because defendant had not cured his default "within the time period provided by law," the note and agreement were forfeited. Plaintiff subsequently filed this FED action seeking to evict defendant contending that he was a "tenant at sufferance under ORS 91.040."[2] In the

---

[1] The limited judgment also contained the following declarations relevant here:

"2. Plaintiff's [predecessor] in interest and Defendant entered into a promissory note *** and residential sale agreement *** which, together are the functional equivalent of a land sale contract.

"3. Defendant has an equitable interest in and to the Property[.]

"4. Plaintiff's interest in the Property is superior to any interest, lien, right, title or claim of the Defendant in the Property."

[2] Under ORS 93.930(2)(c), one of the effects of the recording of an affidavit of forfeiture is that any persons remaining in possession of the property 10 days after the affidavit is recorded "shall be deemed to be tenants at sufferance." In turn, ORS 91.040 provides: "One who comes into possession of the real estate of

FED action, plaintiff sought possession of the premises, "as well as her costs, disbursements, and attorney's fees" under the sale agreement. To support that request, plaintiff asked the court to take judicial notice of the 2015 judgment and enforce that ruling, thereby precluding defendant from relitigating those issues.

Defendant opposed plaintiff's action, contending that the property was not subject to any actual land sale contract and that, even if the parties' agreement was functionally equivalent to a land sale contract, plaintiff had not been entitled to forfeiture, because the contract did not provide for a forfeiture remedy as contemplated by the applicable statutory scheme. When questioned by the trial court as to why the 2015 judgment did not control, defendant answered that the 2015 judgment resolved plaintiff's claims for breach of contract, declaratory relief, and foreclosure, and had nothing to do with forfeiture. After taking judicial notice of a statutory warranty deed transferring MacBale's interest to plaintiff, the sale agreement, the promissory note, plaintiff's affidavit of forfeiture, and the 2015 judgment, the trial court ruled as follows:

> "I do find that there was an order of limited judgment by default against the defendant in this case that specifically granted the plaintiff the right to pursue a forfeiture remedy under ORS 93.905 through ORS 93.940. And the opportunity for [defendant] to litigate that has long since passed. And, therefore, the proper steps were taken and I will grant the motion of the plaintiff."

In accordance with that ruling, the trial court entered a judgment of restitution and a money award in plaintiff's favor, which defendant now appeals.

On appeal, defendant raises two assignments of error, which he addresses in a single combined argument. In his first assignment, defendant asserts that "[t]he trial court erred in entering a judgment of restitution of the premises against defendant." Defendant's second assignment of error contends that "[t]he trial court erred in granting plaintiff's

---

another lawfully, but who holds over by wrong after the termination of the term, is considered as a tenant at sufferance. No notice is required to terminate a tenancy at sufferance."

motion for judicial notice to the extent the court took judicial notice of the legal issues presented by the pleadings and by the parties at trial." Defendant argues that the 2015 judgment and issue preclusion "are red herrings" in this case. Defendant reasons that, because, by statute, the remedy of forfeiture is self-executing when it is available, the 2015 judgment cannot be preclusive in this case because that judgment "was not a legal prerequisite to obtaining forfeiture." Defendant adds that the 2015 judgment

> "cannot have any preclusive effect as to plaintiff's entitlement to forfeiture because plaintiff did not plead and certainly did not actually litigate forfeiture on the merits in the Foreclosure action. Nor did defendant have a full and fair opportunity in the Foreclosure action to be heard on that issue. *See Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103-04, 862 P2d 1293 (1993)."

In oral argument on appeal, defendant expressed his understanding that he could not collaterally attack the 2015 judgment and declined to characterize his challenge as a collateral attack. He explained, rather, that the essence of his argument was "that in that judgment there's no evidence that the issue of forfeiture was adjudicated."

In response, plaintiff defends the trial court's conclusion that the 2015 judgment is preclusive here. Relying on the issue preclusion analysis set forth in *Nelson*, *id.*, plaintiff argues that she has met her burden of establishing a *prima facie* case of preclusion in that the issues between the two proceedings are identical, the issues were actually litigated and essential to a final decision in the earlier proceeding, and defendant was a party to that prior proceeding. Plaintiff further argues that, in light of that *prima facie* showing, defendant must—but cannot—meet his burden of establishing that he either did not have a full and fair opportunity to be heard on the issues in the prior proceeding or that the prior proceeding was not the type of proceeding that warrants preclusive effect. *See Berg v. Benton*, 297 Or App 323, 327-28, 443 P3d 714 (2019) (discussing burdens associated with *Nelson*'s issue-preclusion analysis). Plaintiff argues that defendant had a full and fair opportunity to litigate the issues in the earlier proceeding, but he elected to forgo that opportunity by defaulting. As to the specific issue

of forfeiture, plaintiff observed during oral argument that, prior to defaulting, defendant was on notice that plaintiff intended to seek a ruling on that issue, because she had served him with a motion for limited judgment by default identifying that as a matter to be addressed by the trial court.

Although neither party has expressly raised the issue, we begin by considering the jurisdictional implications of defendant's arguments about the effect of the 2015 judgment. *See Roley v. Sammons*, 197 Or App 349, 352, 105 P3d 879 (2005) (recognizing our obligation to consider, *sua sponte*, a trial court's jurisdiction to enter a limited judgment even where no party has raised the issue).[3] Here, the issue is not whether the trial court had both personal jurisdiction over defendant and subject matter jurisdiction to hear the parties' dispute—it did. *See Montoya v. Housing Authority of Portland*, 192 Or App 408, 413-14, 86 P3d 80 (2004) (explaining that trial court had personal jurisdiction over defendants where they had been properly served and that "trial courts have subject matter jurisdiction over all actions unless a statute or rule of law divests them of jurisdiction" (internal quotation marks omitted)). However, notwithstanding the trial court's personal and subject matter jurisdiction, there remains a possibility that its judgment was void and therefore incapable of having "legal force or effect." *See PGE v. Ebasco Services, Inc.*, 353 Or 849, 855-56, 306 P3d 628 (2013) (discussing that possibility). We proceed to consider whether such circumstances are present here.

"Generally speaking, when a trial court has both subject matter jurisdiction and personal jurisdiction, its judgment, even if erroneous, is not void." *Id.* at 856. Rather, such a judgment typically is merely voidable. *Id.* That conclusion, however, "is a qualified one" subject to at least two exceptions. *Id.* at 859. First, the violation of a statute by

---

[3] We note that, although defendant has not raised any jurisdictional issues on appeal and has expressly disavowed making any collateral challenge to the 2015 judgment, his arguments as to why that judgment should not be given preclusive effect are somewhat analogous to the analysis that follows. However, in light of our resolution of the jurisdictional question, we need not further consider the parties' preclusion arguments.

which "the legislature intended to impose a limitation on the trial court's authority to exercise its jurisdiction" may render a judgment void. *Id.* (discussing ORCP 67 C's provisions related to relief granted in a judgment). "Second, a statutory violation that also deprives a party of due process may render a judgment void." *Id.* at 860 (examining the Due Process Clause of the Fourteenth Amendment to the United States Constitution). A void judgment "is one that has no legal force or effect and can be attacked at any time and any place, whether directly or collaterally." *Id.* at 856 (internal quotation marks omitted). As a result of that distinction, "principles relating to preservation do not apply to void judgments; those principles do, however, apply to the assertion of error with respect to judgments that are merely voidable." *Id.* at 856-57. The Supreme Court has recognized a void judgment as being "'incapable of being confirmed, ratified, or enforced in any manner or to any degree.'" *State v. McDonnell*, 343 Or 557, 562, 176 P3d 1236 (2007), *cert den*, 555 US 904 (2008) (quoting *Black's Law Dictionary* 861 (8th ed 2004)). Thus, even though defendant has not argued that the 2015 judgment is void, if, in fact, that judgment is void, then we cannot enforce it, whether through issue preclusion or otherwise.

Our review of the Supreme Court's reasoning in *PGE* persuades us that the 2015 judgment is void. In *PGE*, an insurer collaterally challenged a default judgment that ordered the insurer to pay monetary relief, together with costs and attorney fees. 353 Or at 852. After that challenge failed, the insurer presented an unpreserved argument on appeal that the judgment was void because it failed to comply with ORCP 67 C[4] by awarding relief in excess of the amount prayed for in the pleadings. *Id.* at 853. On review by the Supreme Court, the court assessed "whether a default judgment awarding monetary relief violate[d] ORCP 67 C [when] the underlying complaint did not state the specific

---

[4] ORCP 67 C provides:

"Every judgment shall grant the relief to which the party in whose favor it is rendered is entitled. A judgment for relief different in kind from or exceeding the amount prayed for in the pleadings may not be rendered unless reasonable notice and opportunity to be heard are given to any party against whom the judgment is to be entered."

amount of money or damages being sought," and whether that violation "render[ed] the judgment void and therefore subject to challenge at any time." *Id.* at 851. Although the court concluded that the entry of the judgment had violated ORCP 67 C, the court held that the violation did not, in and of itself, render the judgment void. *Id.* at 858-60 (examining the scope of ORCP 67 C).

The Supreme Court then considered whether the violation of ORCP 67 C had nonetheless deprived the insurer of due process and, by virtue of that deprivation, had rendered the judgment void. *Id.* at 860. As the court explained, "even where a trial court has personal and subject matter jurisdiction, a violation of due process notice requirements may deprive the court of 'jurisdiction' to enter an order or judgment." *Id.* at 861. That being said, "not every defect in notice renders a judgment void." *Id.* "That is, due process requires reasonable notice to a defendant before a default judgment or order may be entered against it, but not necessarily strict compliance with the applicable procedural statutes and rules." *Id.* In considering what constituted reasonable notice, the court looked to federal case law applying FRCP 54(c),[5] the federal analog to ORCP 67 C. *Id.* at 863. From that case law, the court gleaned the following rule:

> "[I]nsofar as due process is concerned, a default judgment cannot (1) award monetary relief that is greater than the specific amount pleaded; or (2) provide other relief that is different in kind from the relief sought in the pleadings, because the defendant could not reasonably have expected that its exposure to liability would exceed that amount or be different in kind."

*Id.* at 864. In *PGE*, the court identified the primary purpose of the rule to be that the "defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action." *Id.* (internal quotation marks omitted).

---

[5] FRCP 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."

The *PGE* court concluded that the judgment at issue there did not implicate those concerns. *Id.* First, the court noted that the insurance company had not asserted that the default judgment was void for awarding relief of a different *kind* than that sought in the complaint. *Id.* Next, although the court acknowledged that the complaint in that case had not requested any specific *amount* of damages, let alone the amount that was eventually awarded, it did not consider that fact dispositive. *Id.* The court reasoned that, while the failure to allege damages in any specific amount may have rendered the complaint defective, that defect "was apparent on the face of the complaint when [the insurer] was served with a copy of it and the required summons." *Id.* As a result, the court concluded, the insurer had had "[m]ultiple prejudgment options to remedy that defect." *Id.* The court emphasized that the insurer had neither moved to make the complaint more definite and certain under ORCP 21 D, nor moved to dismiss for failure to allege sufficient facts to state a claim. *Id.* at 864-65. The court held, therefore, that the judgment was not void, reasoning that "the complaint itself provided [the defendant insurer] with notice of that defect, and the Oregon Rules of Civil Procedure provided it with ample opportunities for a predefault hearing at a meaningful time and in a meaningful manner." *Id.* at 865. In terms of the identified purposes of notice, the court concluded that "the complaint in [that] case could not have led [the defendant insurer] to believe that only a certain type and dimension of relief was being sought, so that it could attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting." *Id.* (internal quotation marks omitted).

Applying that reasoning here, we conclude that the 2015 judgment awarding plaintiff the right to forfeiture is— as to at least that provision—void. Plaintiff's complaint in the 2015 litigation sought relief that differed in kind from the relief that the trial court awarded in the 2015 judgment. Whereas the complaint, in relevant part, sought a declaration that "Plaintiff's equitable lien against the Property may be *foreclosed*," the court entered a declaration that plaintiff was "entitled to pursue a *forfeiture* remedy under ORS 93.905 through ORS 93.940 to recover" the property at

issue.[6] (Emphases added.) Thus, unlike in *PGE*, because the complaint in the 2015 litigation requested a different kind of relief than that awarded in the 2015 judgment, it could not have been apparent to defendant from the outset that he could be subject to that kind of relief. Stated differently, "the complaint in this case could * * * have led [defendant] to believe that only a certain type and dimension of relief was being sought, so that [he] could attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting." *Id.* (internal quotation marks omitted). We recognize that plaintiff served defendant with the motion for limited judgment by default that identified her right to forfeiture as an issue to be determined by the judgment. However, that motion, which plaintiff served only eight days before the trial court issued the limited judgment,[7] was the first and only notice that defendant would have had that plaintiff had altered her claim for relief. Under those circumstances, we cannot conclude that defendant was given adequate notice and opportunity, let alone the multiple opportunities given the insurer in *PGE*, to have a "predefault hearing at a meaningful time and in a meaningful manner." *Id.* Thus, as a matter of due process, to the degree that the 2015 judgment provided relief not sought in the underlying complaint, that judgment is void and cannot be given legal effect. *See Montoya*, 192 Or App at 416 (concluding that the judgment at issue was void "to the extent that the amount of the judgment exceed[ed] the amount prayed for").

That conclusion alone warrants reversal of the judgment of restitution and a remand for further proceedings in the underlying FED action. Nonetheless, we proceed to address the legal issue raised by defendant's appeal, because that issue "is likely to arise on remand." *State v. Savage*, 305 Or App 339, 342, 470 P3d 387 (2020). Specifically, we consider whether, under ORS 93.905 to 93.940, forfeiture is available

---

[6] Plaintiff has never argued that, by requesting a declaration that she was entitled to foreclose her equitable lien against the property, she was effectively seeking a declaration of her right to forfeiture, that is, that a right to foreclosure *is* a right to forfeiture. Thus, we proceed with the parties' apparent understanding that foreclosure and forfeiture are distinct forms of relief.

[7] Defendant was served with the motion for limited judgment by default on November 30, 2015. The order for limited judgment by default issued on December 8, 2015.

as a remedy in a suit to enforce a land sale contract, even when the contract being enforced does not expressly provide for that remedy.

Although defendant's argument on appeal is focused on what, in his view, the 2015 judgment means, the crux of his argument rests on his understanding of the applicable statutes, namely that, "not everyone who pursues a forfeiture remedy can legally qualify for forfeiture under the statutory scheme." From that premise, he proceeds to argue that, it "is plain from undisputed facts in the record that plaintiff was not legally entitled to forfeiture, notwithstanding the fact than an Affidavit of Forfeiture was filed." Defendant does not reprise his argument that his agreement with MacBale did not constitute a land sale contract. However, he argues that, even assuming, as set forth in the 2015 judgment, that the sale agreement and note were the functional equivalent of a land sale contract, plaintiff was not entitled to the remedy of forfeiture.[8]

In support of that argument, defendant identifies what he views as qualifying language throughout the statutes governing forfeiture, ORS 93.905 to 93.940. Defendant argues that, under those provisions, for the remedy of forfeiture to be available in the event of a buyer's default under a land sale contract, the contract must expressly provide for that remedy. Therefore, defendant argues, whether or not plaintiff may be entitled to *pursue* a forfeiture remedy, that pursuit cannot succeed, because the agreement and note comprising the land sale contract in this case did not contemplate that remedy. Ultimately, defendant asserts, the trial court erred in awarding a judgment of restitution to plaintiff "because she does not have any right to possess the premises by forfeiture or otherwise."[9]

---

[8] Although we recognize that the conclusion in the 2015 judgment that the sale agreement and promissory note were the "functional equivalent" of a land sale contract is not at issue in this appeal, we observe, for what it may be worth, that, under the statutes at issue here, ORS 93.905 to 93.940, the legislature has provided that the statutory term "'contract for transfer or conveyance of an interest in real property' shall not include earnest money or preliminary sales agreements, options or rights of first refusal." ORS 93.905. We express no opinion as to that statute's bearing, if any, on the 2015 ruling.

[9] Defendant argues in the alternative that "even if plaintiff had acquired a right to possess the premises by forfeiture, an FED action was not the proper

In response, plaintiff does not dispute that neither the sale agreement nor the note referenced a forfeiture remedy.[10] She argues, however, that, "[n]either ORS 93.910 nor ORS 93.930(1) expressly requires that there *** be a contract with an express forfeiture remedy before a party may pursue a forfeiture remedy." Citing our decision in *Ochs v. Albin*, 137 Or App 213, 220, 903 P2d 906 (1995), plaintiff argues that, if a party defaults on a land sale contract, "the remedy of forfeiture arises by operation of law." Therefore, notwithstanding our conclusion that the 2015 judgment is not preclusive on the issue of plaintiff's entitlement to forfeiture, her position would remain that, under *Ochs*, the remedy of forfeiture is available to her. That is, because the 2015 judgment established that the parties' agreement was the "functional equivalent" of a land sale contract, a conclusion defendant no longer challenges, *Ochs* dictates the conclusion that the remedy of forfeiture is available to her as a matter of law.

We turn to those arguments, beginning with a review of the statutes at issue. We then consider our decision in *Ochs* for its bearing, if any, on the disposition of this case. For the reasons that follow, we agree with defendant's construction of the statutes. We further conclude that, although there is language in *Ochs* that could be viewed as supporting plaintiff's argument that, upon a buyer's default under a land sales contract, the remedy of forfeiture arises by operation of law, that decision does not control the outcome of this case.

The parties' arguments require us to construe ORS 93.910 and ORS 93.930(1). When construing statutes, we

---

remedy" to seek. Defendant, however, failed to preserve that argument for appeal. *See, e.g.*, *State v. Gray*, 286 Or App 799, 806, 401 P3d 1241 (2017), *rev den*, 362 Or 482 (2018) ("[T]he presence of a common thread between an objection at trial and an argument on appeal does not satisfy the preservation requirement if the two arguments are qualitatively different." (Internal quotation marks omitted.)). Accordingly, we do not consider it further.

[10] Nor, we note, did those writings indicate the parties' intent to prepare a separate land sale contract setting forth the terms of their agreement. In that regard, this case differs from *Ochs v. Albin*, 137 Or App 213, 215, 903 P2d 906 (1995) (quoting parties' sale agreement, including terms anticipating that purchaser would draft a land sale contract reflecting agreed-upon terms), a case we discuss in greater depth below.

attempt to determine the legislature's intended meaning by focusing primarily on the statutory text in its context, while also considering any relevant and available legislative history "'for what it's worth.'" *Kinzua Resources v. DEQ*, 366 Or 674, 680, 468 P3d 410 (2020) (quoting *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009)).

We apply that framework here. Again, defendant argues that, under ORS 93.910 and ORS 93.930(1), forfeiture is not available as a remedy upon a buyer's default under a land sale contract unless the contract being enforced expressly provides for such a remedy. Our initial examination of the relevant statutory text provides some support for that argument. In its entirety, ORS 93.910 provides:

> "*Whenever a contract* for transfer or conveyance of an interest in real property *provides a forfeiture remedy*, whether the remedy is self-executing or is optional, forfeiture of the interest of a purchaser in default under the contract may be enforced only after notice of the default has been given to the purchaser as provided in ORS 93.915, notwithstanding any provision in the contract to the contrary."

(Emphases added.) And, in relevant part, ORS 93.930(1) states:

> "*When* a contract for conveyance of real property has been forfeited *in accordance with its terms* after the seller has given notice to the purchaser as provided in ORS 93.915, the seller shall record an affidavit with the property description, a copy of the notice of default and proof of mailing attached, setting forth that the default of the purchaser under the terms of the contract was not cured within the time period provided in ORS 93.915 and that the contract has been forfeited. ***"

(Emphases added.)

Both ORS 93.910 and ORS 93.930(1) begin with conjunctions: "Whenever" and "When." Those terms, together with their associated clauses—"a contract *** provides a forfeiture remedy" and "a contract *** has been forfeited in accordance with its terms"—modify the balance of each provision. Thus, although ORS 93.910 permits "forfeiture of the interest of a purchaser in default under the contract [to] be enforced," that statute may, as a matter of plain text and

grammar, be viewed as limiting its application to specific circumstances, namely, "[w]*henever* a contract * * * provides" that remedy.[11] (Emphasis added.) *See Webster's Third New Int'l Dictionary* 2602 (unabridged ed 2002) (defining conjunction "whenever" as "at any or all times *that* : in any or every instance *in which*" (emphases added)). Similarly, rather than somehow authorizing a forfeiture remedy every time a buyer defaults under a land sale contract, ORS 93.930(1) can be viewed as merely providing a process for seeking that remedy *if* it is available, that is, "[w]*hen* a contract * * * has been forfeited in accordance with its terms." (Emphasis added.) *See Webster's* at 2602 (defining "when" in relevant part as "in the event that : on condition that : *IF*" (emphasis added)). We can conceive of no argument that a contract can be forfeited "in accordance with its terms" when, as is the case here, neither the term "forfeiture" nor any comparable term appears in the sale agreement or note that served as the "functional equivalent" of a land sale contract.

We recognize that, although each of the foregoing clauses provides support for a narrow interpretation of the statutes, such as defendant advocates, neither wholly forecloses the possibility that forfeiture might be available even in instances where the underlying contract does not expressly provide for that remedy. That is, even though the statutes appear to address circumstances in which land sale contracts expressly permit forfeiture, neither statute explicitly prohibits forfeiture when a contract is silent on that point. *See Dement Ranch v. Curry County Board of Commissioners*, 306 Or App 315, 321, 474 P3d 435 (2020) ("We must be mindful when we construe statues to not 'insert what has been omitted[.]'" (Quoting ORS 174.010.)).

For further guidance, therefore, we look to the available legislative history and the context in which the legislature enacted the forfeiture provisions of ORS chapter 93. Before the enactment of those provisions in 1985, our courts had developed "a well-recognized rule that, because the forfeiture of rights under contracts is not favored,

---

[11] Under ORS 93.910, enforcement is also subject to another condition—the purchaser must be given notice of the default "as provided in ORS 93.915." Notice of defendant's default under the parties' agreement is not at issue in this case.

contract provisions which may result in forfeitures are to be construed liberally in favor of the party against whom such a forfeiture may be claimed." *Roth Develop. v. John Gen'l Contr.*, 263 Or 561, 568, 503 P2d 493 (1972) (applying that rule to a land sale contract). That being said, contractual forfeiture provisions were, as a general rule, deemed enforceable, notwithstanding the absence of any statutory provision for that remedy. *Id.* at 570 (noting enforceability of "self-executing" forfeiture proceedings); *cf. Elsasser v. Wilcox*, 286 Or 775, 779, 596 P2d 974 (1979) (when contract includes multiple remedies, including forfeiture, a seller must give reasonable notice to defaulting party before invoking forfeiture). However, it is apparent from that case law that, at the time the forfeiture statutes were enacted, the remedy of forfeiture would generally not have been available if the land sale contract being enforced did not authorize it. That is, given that our courts construed contract provisions that might allow for forfeiture liberally in favor of the defaulting party, it stands to reason that a contract that did not provide for forfeiture at all would not have been understood to authorize such a remedy.

That common-law context informs both our interpretation of the forfeiture statutes and our understanding of the available legislative history. When the bill containing those statutes was before the House Judiciary Subcommittee, the then-prevailing understanding of the forfeiture remedy was described as follows:

"There are some deficiencies with the forfeiture remedy in that, depending on the type of *** provision for forfeiture in the contract, the buyer may or may not be entitled to notice of the default and an opportunity to cure whatever the default is. The Oregon courts have held that if the provision is self-executing—which means that *** there are no alternative remedies in the contract, there's only one remedy and that's forfeiture—*** then there is no notice required for the buyer and the buyer has no right to cure the default and basically that's the end of it. *** Even if the provision is not self-executing, and there are alternative remedies as is true of most real estate contracts, the courts have varied [in determining] how much time the buyer is allowed to cure the default. *** The purpose of this bill is to clarify what kind of notice is required; to set

up a procedure whereby the buyer has the opportunity to cure the default; and to provide an opportunity for those who hold an interest subordinate to the buyer, to also cure the default."

Tape Recording, House Subcommittee II on Judiciary, HB 2361, Mar 5, 1985, Tape 180 (statement of Don Carter, Oregon State Bar). Later in that testimony, the same witness explained that "this bill only applies if the contract does provide for forfeiture remedy. *** In other words, if the contract has nothing about forfeiture remedies in it, this doesn't add anything." *Id.* at Tape 182.

As that legislative history indicates, the legislature's goal in adopting what is now ORS 93.905 through 93.940 was not to create a forfeiture remedy where none existed, *i.e.*, when the land sale contract being enforced did not provide for forfeiture. The goal instead appears to have been to address perceived deficiencies related to the requirement of notice and the opportunity to cure, which, at the time, tended to vary with "the type of *** provision for forfeiture in the contract." Nothing suggests that the legislature sought to address contracts that did not provide for forfeiture at all; rather, the contracts under consideration were either those providing *only* that remedy or those providing that remedy *as one of several alternatives*. That, of course, is wholly consistent with text that the legislature adopted. *See* ORS 93.910 (relating to a contract that "provides a forfeiture remedy, whether the remedy is self-executing or is optional"); ORS 93.930(1) (establishing notice requirements when a contract is "forfeited in accordance with its terms"). Thus, the legislative history, understood in the context in which the forfeiture statutes were enacted, further supports defendant's interpretation. In light of that review of the text, context, and legislative history of the forfeiture statutes at issue, we conclude that neither ORS 93.910 nor ORS 93.930(1) can reasonably be understood to give rise to a forfeiture remedy in every land sale contract.

We turn to whether our decision in *Ochs* dictates a different understanding of those statutes or otherwise requires us to conclude that there was a forfeiture remedy available to plaintiff in this case. In *Ochs*, the plaintiff had

persuaded the defendant to sell a house by presenting her with a proposed earnest money agreement and a $1,000 earnest money check. 137 Or App at 215. The agreement was set out in a document entitled "Owner's Sale Agreement and Earnest Money Receipt" and provided, among other things, that the parties would enter into a land sale contract to be drafted by plaintiff's attorney at his expense. *Id*. Although both parties signed the agreement and the plaintiff arranged to have the contract drafted, the defendant notified the plaintiff that she would not be going through with the sale. *Id*. at 216. The plaintiff sued, seeking specific performance of the parties' agreement. *Id*. at 216-17.

The trial court in *Ochs* concluded that the parties had entered into a valid contract and that the defendant had breached that agreement. *Id*. However, the court declined to specifically enforce the contract by requiring the defendant to enter into a land sale contract, apparently reasoning that, because the parties had agreed to enter into a *further* agreement whose terms were uncertain, the earnest money agreement was itself insufficiently certain to enforce. *Id*. at 217. The plaintiff appealed. *Id*.

After reviewing Supreme Court case law regarding the specific enforcement of agreements under similar circumstances, we concluded on appeal that the parties' agreement was sufficiently certain to specifically enforce. *Id*. at 218-19 ("If all of the material terms that are to be incorporated into a future writing have been agreed on, the initial agreement is specifically enforceable."). We held that the essential terms of every land sale agreement—in addition to any unique terms specifically contemplated—are "the designation of the parties, *** identification of the property to be sold, the promise to sell and to buy, the purchase price," how it will be paid, and the time of closing. *Id*. at 218. Considering the agreement of the parties in that case, we concluded that it was "sufficiently definite to be enforceable," *id*. at 219, which entitled the plaintiff "to specific performance of the earnest money agreement that the parties executed," *id*. at 220.

In reaching that conclusion, we considered the defendant's argument that the earnest money agreement

was unenforceable because it did not specify what remedies would be available to her "in the event of a default to protect her security interest in the property." *Id.* at 220. Without deciding whether, given the above list of "essential terms," the absence of a remedy provision would render the contract unenforceable, we concluded that "a land sale contract implicitly provides a remedy to the seller on default, because the title remains with the seller until the purchase price is paid in full." *Id.*[12] As relevant here, we went on to say that,

> "[i]n the event of a default on a land sale contract, the remedies such as forfeiture *or* foreclosure arise by operation of law. *See, e.g.*, ORS 93.905 - ORS 93.915 (procedure for declaring a forfeiture of vendee's interest in a land sale[] contract)."

*Id.* (emphasis added). As noted, plaintiff in this case relies on that discussion in *Ochs* to conclude that, if a party defaults on a land sale contract, "the remedy of forfeiture arises by operation of law."

Having placed that reference to forfeiture in context, however, we disagree with plaintiff that our decision in *Ochs* is controlling here. First, rather than deciding whether every land sale contract automatically carries with it the specific remedy of forfeiture, our point in *Ochs* appears to have been that every such contract implicitly provides for some remedy—"forfeiture *or* foreclosure"—sufficient to meet a contract's particularity requirements. *Id.* (emphasis added). Second, our parenthetical discussion of ORS 93.905 to 93.915 neither purports to construe those statutes nor says anything different than we have said above, namely, that ORS chapter 93 sets out a "procedure" by which forfeiture may be declared; that parenthetical does not say that the statutes insert that remedy into every land sale contract regardless of its terms. *See id.*

Given that context, we cannot give our reference to forfeiture in *Ochs* the significance that plaintiff gives it. Our close examination of the statutory text and its legislative history persuade us that the remedy of forfeiture does not

---

[12] It is not apparent from our discussion in *Ochs* whether our reference to a "land sale contract" was directed at the parties' earnest money agreement or the hypothetical land sale contract that the parties' agreement contemplated.

arise as a matter of law by virtue of ORS chapter 93, as plaintiff contends. Furthermore, in light of the common-law background for the forfeiture provisions of that chapter, we see no basis for a broad understanding that, by statute or otherwise, every land sale contract carries with it the specific remedy of forfeiture, a remedy that our courts historically have disfavored. For those reasons we read *Ochs* narrowly, so as to not reach such broad conclusions.

Ultimately, we conclude that the trial court erred in enforcing the 2015 judgment against defendant to the extent that the judgment decided an issue—plaintiff's right to forfeiture—not asserted in the operative complaint or adequately raised during the proceedings leading up to that judgment. We further conclude that, contrary to plaintiff's argument, a forfeiture remedy did not arise as a matter of law, notwithstanding the trial court's conclusion in 2015 that the sale agreement and note in this case were the "functional equivalent" of a land sale contract. Accordingly, we reverse the judgment of restitution and remand for further proceedings.

Reversed and remanded.