Argued and submitted April 1, affirmed June 8, petition for review denied September 16, 2022 (370 Or 214)

In the Matter of E. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. H.,
*Appellant.*

Douglas County Circuit Court
20JU05024; A177299

513 P3d 61

Father appeals the juvenile court's order denying his ORS 419B.923 motion to set aside a jurisdictional judgment, arguing that the judgment is void because the appointment of the judge pro tempore who presided over the hearing and entered the judgment had previously expired. Alternatively, he argues that his ORS 419B.923 motion was a permissible collateral attack on the judgment. *Held*: The judge pro tempore's acts were valid under the de facto judge doctrine because he was acting under color of right. Consequently, the judgment was not void and it could only be challenged through the statutory equivalent of *quo warranto* proceedings or before the judgment was rendered.

Affirmed.

William A. Marshall, Judge.

Joel Duran, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Jon Zunkel-deCoursey, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, Inge D. Wells, Assistant Attorney General, and Derek Olson, Certified Law Student.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

After the juvenile court asserted jurisdiction over father's child, E, father moved to set the judgment aside on the ground that the judge pro tempore who presided over the hearing and who signed and entered the judgment lacked authority to do so because his pro tempore appointment had expired several months earlier. The trial court denied father's motion, concluding that the "de facto judge" doctrine operated to validate the judgment. Father appeals the order denying his set-aside motion, contending that the de facto judge doctrine does not apply in these circumstances. We affirm.

For purposes of this appeal, the facts are undisputed. On September 1, 2020, the Department of Human Services (DHS) petitioned for juvenile court jurisdiction over E based on allegations that father had sexually abused E and that mother was unwilling or unable to protect E from sexual abuse.[1] Judge Thomas, who was sworn in as a judge pro tempore in the Douglas County Circuit Court on April 12, 2018, presided over the jurisdictional hearing on May 7, 2021. Thomas found that DHS had proved the allegations in the petition and, subsequently, on May 11, 2021, conducted a disposition hearing. On that same date, Thomas signed and caused to be entered in the register a "Judgment of Jurisdiction and Disposition" asserting dependency jurisdiction over E under ORS 419B.100 and making her a ward of the court under ORS 419B.328. On June 10, father timely appealed that judgment.

On July 16, 2021, while father's appeal of the jurisdictional judgment was pending, the presiding judge of the Douglas County Circuit Court at the time notified members of the Douglas County Bar Association by email that Thomas's pro tempore status had expired on April 11, 2021.[2] On September 3, 2021, father moved the juvenile court to set aside the jurisdictional judgment under ORS 419B.923,[3] on

---

[1] E was 16 years old at the time of the jurisdictional hearing.

[2] It appears that the expiration was an oversight; Thomas's status as judge pro tempore has since been renewed.

[3] That statute allows the court to modify or set aside any judgment made by it for reasons including, but not limited to, clerical mistakes, excusable neglect, and newly discovered evidence.

the ground that Thomas lacked authority to preside over the matter and to sign the judgment and, therefore, the judgment was without legal authority. On November 8, 2021, the court denied the motion, reasoning that the de facto judge doctrine applied to validate Thomas's actions.[4] Among other things, the court reasoned that "this is an issue that, had it been raised at trial when the parties could have and, well, might have and, well, should have been aware, based upon the status of the Judge, *that they needed to raise it at the time*." (Emphasis added.) Father appeals the order denying the motion.[5]

We review the juvenile court's denial of a motion to set aside a judgment under ORS 419B.923 for abuse of discretion. *Dept. of Human Services v. A. D. G.*, 260 Or App 525, 534, 317 P3d 950 (2014). We review the legal questions underlying the court's ruling for legal error. *Id.* If the ruling is "within the range of legally correct discretionary choices and produced a permissible, legally correct outcome, then the court did not abuse its discretion." *Id.* (internal quotation marks omitted).

As noted, Thomas had been appointed judge pro tempore in the Douglas County Circuit Court in April 2018. Under ORS 1.635,

"[t]he Supreme Court may appoint any eligible person to serve as judge pro tempore of the * * * circuit court in any county or judicial district, whenever the Supreme Court determines that the appointment is reasonably necessary and will promote the more efficient administration of justice. A person is eligible for appointment if the person is a resident of this state and has been a member in good standing of the Oregon State Bar for a period of at least three years next preceding the appointment."

In turn, "[e]ach judge pro tempore appointed and qualified as provided in ORS 1.635 has all the judicial powers, duties, jurisdiction and authority, while serving under the appointment, of a regularly elected and qualified judge of the court

_____

[4] The motion was heard and ruled on by the presiding judge.

[5] Although father also moved for a summary determination of the appealability of the order, he acknowledged at oral argument that the order is appealable, effectively withdrawing his motion. We agree that the order is appealable.

to which the judge pro tempore is appointed or assigned." ORS 1.645(2).

It is undisputed that Thomas's pro tempore judge appointment expired on April 11, 2021, by operation of statute. Thus, father contends, Thomas lacked the "judicial powers, duties, jurisdiction and authority" to preside over the matter and enter the jurisdictional judgment, and the judgment is therefore void. In father's view, Thomas was not a de facto judge, because he was not acting "under color of any law that purported to confer authority upon him to do so." Alternatively, father asserts that, even if the judgment is "merely voidable, rather than void," he has permissibly raised a cognizable challenge to it under ORS 419B.923.

The state responds that the judgment is not void, because Thomas was a de facto judge—that is, acting under color of authority—at the time he entered the judgment. Consequently, according to the state, father cannot collaterally attack the judgment by way of motion under ORS 419B.923. As explained below, we agree with the state.

A void judgment is one "that has no legal force or effect," and it thus may "be attacked at any time and any place, whether directly or collaterally." *PGE v. Ebasco Services, Inc.*, 353 Or 849, 856, 306 P3d 628 (2013) (internal quotation marks omitted). A voidable judgment, on the other hand, although "irregular or erroneous," nonetheless has legal force because it was "rendered by a court having jurisdiction," and it is "subject only to direct attack." *State v. McDonnell*, 343 Or 557, 562, 176 P3d 1236 (2007), *cert den*, 554 US 904 (2008) (internal quotation marks omitted). As we observed in *Mann v. DeCamp*, 280 Or App 427, 431, 380 P3d 1080, *rev den*, 360 Or 697 (2016), "Oregon courts have consistently recognized that an action taken by a judge who lacks the authority to take the action is voidable rather than void if the court had subject matter jurisdiction over the case in which the judge acted." *See McDonnell*, 343 Or at 570 (judgment rendered by judge who had been disqualified from presiding in the case voidable but not void, because the error did not deprive the trial court of subject matter jurisdiction and defendant was therefore required to preserve the error).

That principle applies with equal force to actions taken by a de facto judge. *See Mann*, 280 Or App at 431 (so stating, based on, for example, *State ex rel Madden v. Crawford*, 207 Or 76, 295 P2d 174 (1956) (discussed below)). *See also McDonnell*, 343 Or at 568-70 (relying on court's reasoning in cases concerning the acts of de facto judges to bolster its conclusion that judgment entered by judge who had been disqualified was merely voidable but not void). Thus, the first—and, as it turns out—dispositive question in this case is whether Thomas was a de facto judge when he presided over the case and rendered the judgment at issue here.

We begin with the pertinent case law. The first reported case on the subject of the de facto judge doctrine in Oregon appears to be *Hamlin v. Kassafer*, 15 Or 456, 15 P 778 (1887). There, the issue was the validity of a judgment rendered by an official, Foudroy, who previously had held the office of justice of the peace, but, at the time of the judgment, had been defeated in his reelection bid by another official, Hubbel. *Id.* at 457. Foudroy refused to surrender the "office, its docket, and books," to Hubbel and "continued to exercise and perform the functions" of the office. *Id.* Hubbel also acted as, and performed the duties and functions of, a justice of the peace; however, "the evidence indicate[d] that these acts were performed in [Hubbel's] official character as a city recorder, by virtue of which he was ex officio justice of the peace." *Id.* The plaintiff requested the court to instruct the jury that Foudroy "was a mere usurper" when he issued the judgment, which, according to the court, would render his acts "utterly void." *Id.* at 458, 460.

Surveying cases from various jurisdictions, the court distilled the following:

> "The distinction, then, which the law recognizes, is that an officer de jure is one who has the lawful right or title, without the possession, of the office, while *an officer de facto has the possession, and performs the duties under the color of right, without being actually qualified in law so to act*, both being distinguished from the mere usurper, who has neither lawful title nor color of right. The mere claim to be a public officer is not enough to constitute one an officer de facto. *There must be some color to the claim of right to the office, or without such color, a performance of official duties,*

*with the acquiescence of the public, for such a length of time
as to raise a presumption of colorable right.*"

*Id.* at 459 (emphases added). The policy underlying the
de facto judge doctrine, the court explained, is that it would
be

"unjust a[nd] unreasonable to require every individual
doing business with such officer to investigate and deter-
mine at his peril the title of such officer. Third persons,
from the nature of the case, cannot always investigate the
right of one assuming to hold an important office, even so
far as to say that he has color of title to it by virtue of some
appointment or election. If they see him publicly exercising
its authority, if they ascertain that this is generally acqui-
esced in, they are entitled to treat him as such officer, and
if they employ him as such, should not be subjected to the
danger of having his acts collaterally called into question."

*Id.* at 460 (internal quotation marks omitted); *see also Ryder
v. U. S.*, 515 US 177, 180, 115 S Ct 2031, 132 L Ed 2d 136
(1995) ("The *de facto* officer doctrine confers validity upon
acts performed by a person acting under the color of official
title even though it is later discovered that the legality of
that person's appointment or election to office is deficient.");
*id.* at 181 (the doctrine "springs from the fear of the chaos
that would result from multiple and repetitious suits chal-
lenging every action taken by every official whose claim to
office could be open to question, and seeks to protect the
public by insuring the orderly functioning of the government
despite technical defects in title to office" (internal quotation
marks omitted)).

Applying those principles to the facts of the case, the
court in *Hamlin* concluded that, "where one is holding over
after expiration of his term under claim or color of right,
his official acts are those of a de facto officer, and are valid
as to the public and third persons, and cannot be collater-
ally assailed." 15 Or at 463. Thus, the court reasoned, "[a]s
Foudroy was never ousted, or in any manner abandoned
the office, but continued in possession thereof, with all its
legal indicia, exercising its functions and discharging its
duties, he was a de facto officer, and as such, when the judg-
ment was rendered, it cannot be collaterally assailed." *Id.* at
463-64. Instead, the court indicated, the appropriate legal

remedy "is a civil action in the nature of a quo warranto."[6] *Id.* at 462 (internal quotation marks omitted).

Next, in *State v. Holman*, 73 Or 18, 144 P 429 (1914), the court confirmed that the acts of a de facto judge are valid and binding and explained that any challenge to the de facto judge's authority must be made before the adverse judgment is rendered. There, although a statute purporting to abolish the office of county judge and organize the circuit court had previously been held void, *id.* at 24-25, the court concluded that the attempt to organize the circuit court "created at least a de facto court" for the county, and a circuit judge hearing cases in that court "was acting as a de facto judge thereof, and all orders, judgments, and decrees made, given, and rendered by him therein are conclusive, valid, and binding upon all parties, unless his authority in such matters was duly challenged before any determination was reached therein," *id.* at 26-27. The court explained:

> "A party cannot be permitted to wait until an adverse judgment or decree is rendered against him and then claim that the judge before whom his cause was tried was powerless to determine the issues involved. It is to be expected that

---

[6] The common law writ of *quo warranto* was long ago abolished and replaced with a statutory process; however, actions brought under the statute continue to be referred to as *quo warranto* proceedings. *State ex rel Rosenblum v. Nisley*, 367 Or 78, 81, 81 n 2, 473 P3d 46 (2020) (so explaining); ORS 34.810 (providing that "the writ of quo warranto, and proceedings by information in the nature of quo warranto are abolished," but that the same remedies "heretofore obtainable under those forms may be obtained by action in the mode prescribed in ORS 30.510 to ORS 30.640"). ORS 30.510 is the statutory equivalent of the common law writ. *Madden*, 207 Or at 80. That statute provides, as relevant here, that an action may be maintained "in the name of the state, upon the information of the district attorney, or upon the relation of a private party against the person offending *** [w]hen any person usurps, intrudes into, or unlawfully holds or exercises any public office[.]" ORS 30.510(1). Despite the statute's reference to private parties, only a district attorney may initiate a proceeding under ORS 30.510. *Mabon v. Wilson*, 340 Or 385, 133 P3d 899 (2006) (so holding, based on the text of the statute in context—in particular ORS 30.530 and ORS 30.610—as well as the statutory history and prior judicial constructions of the statute and its predecessors). Relatedly, the statutory scheme authorizing judge pro tempores provides, in ORS 1.645(3), that "[t]he eligibility, appointment or qualification of an appointee under ORS 1.635, or the right of the appointee to hold the position of judge pro tempore in any particular county or judicial district while serving under the appointment, is subject to challenge only in a direct proceeding instituted for that purpose as provided in ORS 30.510 to 30.640. The proceeding may be instituted in the Supreme Court if it consents to take original jurisdiction thereof."

when the authority of a judge is thus challenged the objection will be overruled and jurisdiction asserted and maintained. A foundation will thus be laid, however, whereby the action of the court in such particular can be reviewed on appeal. Without such objection the power to hear and determine all causes tried in a de facto court by a de facto judge must, for the sake of peace, the promotion of the interests of parties litigant, and of the welfare of society be conceded to be valid."

*Id.* at 27. *See also Anderson ex rel Poe v. Gladden*, 205 Or 538, 543-44, 288 P2d 823 (1955) (circuit judge presiding over criminal trial in different judicial district from which he was elected "was at least a judge de facto"; accordingly, his authority could not be challenged by collateral attack in habeas corpus proceeding); *Holman et al. v. Lutz et al.*, 132 Or 185, 219-20, 284 P 825 (1930) (Coshow, C. J., concurring) ("'The acts of an officer de facto are as valid and effectual where they concern the public or the rights of third persons, until his title to the office is judged insufficient, as though he were an officer de jure, and the legality of the acts of such an officer cannot be collaterally attacked in a proceeding to which he is not a party.'" (Quoting 46 C. J. 1060, § 378.)).

More recently, the court confirmed those principles in *Madden*, a *quo warranto* proceeding challenging the right of the defendant, a circuit judge, to sit temporarily as a member of the Supreme Court under an appointment authorized by statute. 207 Or at 78. The court held that the underlying statute was unconstitutional, however, the defendant judge—having been appointed under that statute—became a de facto judge, acting under color of authority, and the "[a]cts performed by him in that capacity [were] not invalid." *Id.* at 89-90. The court reiterated that the *quo warranto* proceeding was the appropriate vehicle for challenging a de facto judge's authority—"[h]is acts or his right to act, as a de facto judge, cannot be collaterally attacked. His title or right to the office can be determined only in quo warranto proceedings, brought by or in the name of the state." *Id.* at 90.

With that precedent in mind, we turn to father's arguments in the present case. Father contends that Thomas was not a de facto judge when he presided over the matter

and rendered the jurisdictional judgment, because "he was not acting under color of authority of any law." Pointing to *Madden*, father appears to contend that the de facto judge doctrine applies only where the official has acted under statutory authority purporting to give the official the power to act at the time the challenged act occurred but that is *later* declared unconstitutional or otherwise determined to be void. We reject that contention. Although those were the circumstances at issue in *Madden*, father's argument ignores the other case law discussed above, which makes clear that the doctrine is not so limited. As the court explained in *Hamlin*, color of lawful authority may arise where there is "a performance of official duties, with the acquiescence of the public, for such a length of time as to raise a presumption of colorable right." 15 Or at 459. In other words, as the state points out, the de facto judge doctrine does not depend on the official having actual legal authority (albeit later invalidated); rather one of the underlying principles, beginning with *Hamlin* and running through the case law, is that the official acts with the *appearance* of lawful authority—that is, he is "in possession of the office with the legal indicia of title," *id*. at 461, such that it would be "unjust and unreasonable" to undo acts done by him in that capacity, *id*. at 460.

Father also points to our decision in *State v. Effinger*, 98 Or App 651, 780 P2d 768 (1989), in support of his proposition that Thomas was not a de facto judge. In *Effinger*, the defendant challenged a search warrant that resulted in the discovery of evidence of his crimes. He asserted that the warrant was invalid because it had been signed by a purported temporary justice of the peace pro tempore whose appointment as such had expired when the warrant was issued. *Id*. at 653-54. In a brief opinion, we agreed with the defendant that the purported justice of the peace was not authorized to issue the search warrant because, under the pertinent statute, her 60-day appointment had expired by the time she issued the warrant, and we therefore reversed and remanded for a new trial. *Id*. In doing so, we summarily rejected the state's argument that the de facto judge doctrine operated to validate the warrant. *Id*. at 654. Purporting to distinguish *Madden*, 207 Or at 90, which we recognized as standing for the proposition that a de facto judge is "one who

holds and exercises the office under color of lawful authority though having no authority in law or fact," we stated only that

> "the state refers to no facts that would give [the purported justice] color of lawful authority. She was appointed pursuant to ORS 51.260(2), which expressly limited her appointment to 60 days."

*Id.*

In father's view, *Effinger* compels the conclusion that Thomas was not a de facto judge at the time in question and therefore the judgment he issued is void. Given the binding Supreme Court precedent discussed above, we understand *Effinger* as concluding only that, there, the state had offered no *facts* that the purported justice, although unqualified to act by law, was otherwise in actual possession of the office, exercising its duties and functions, with the acquiescence of the public, for such a length of time as to raise a presumption of colorable right—facts that would, under *Hamlin* and *Holman*, constitute her a de facto judge.[7] *See Hamlin*, 15 Or at 459. Indeed, the only facts we glean from *Effinger* are that it involved a warrant signed by a purported justice of the peace whose authority had expired. In this case, as discussed below, the facts demonstrate that Thomas was publicly performing a judicial role before litigants and acting under color of authority. Those facts make it more closely aligned with those presented in the controlling Supreme Court cases, *Hamlin*, *Holman*, and *Madden*.

The record reflects that Thomas was a judge pro tempore from April 2018 until his appointment lapsed three years later, in April 2021. And, from then until sometime in July 2021, Thomas continued to have possession of the office, along with the legal indicia of title, and he exercised the duties of the office—that is, Thomas continued to preside over cases as assigned by the presiding judge, wearing judicial robes, holding hearings, taking evidence, making findings, and issuing judgments. *See* ORS 1.645(5) (judge pro tempore is "subject to the directions of the regular

---

[7] We note also the possibility that the defendant in *Effinger* properly preserved a challenge to the judge's authority in his motion to suppress, although that is not conclusively discernable from the opinion.

presiding judge of the court in respect to the assignment of cases and the general administration of the business of the court"). In other words, during that time—including when Thomas performed the acts at issue here—Thomas was performing the functions of the office of judge pro tempore with the acquiescence of the public, such that, although he lacked authority in law, he had color of right and, thus, was a judge de facto.[8] Consequently, the challenged judgment is not void and, therefore, it is not subject to collateral attack. *See, e.g.*, *Madden*, 207 Or at 90 (acts as de facto judge cannot be collaterally attacked; rather the "title or right to the office can be determined only in quo warranto proceedings, brought by or in the name of the state"); *Holman*, 132 Or at 220-21 (Coshow, C. J., concurring) (legality of acts of de facto officer cannot be collaterally attacked in a proceeding to which he is not a party); *Holman*, 73 Or at 27-28 (challenge to the de facto judge's authority must be made before the adverse determination is made); *Hamlin*, 15 Or at 462 (until he is ousted by quo warranto, de facto officer "holds the office by the sufferance of the state, and the silence of the government is construed by the courts as a ratification of his acts, which is equivalent to a precedent authority" (internal quotation marks omitted)); *State v. Vogh*, 179 Or App 585, 594-95, 41 P3d 421 (2002) (concluding, by analogy to de facto judge doctrine, that challenge to jury verdict by unsworn jury that was not objected to until after jury had returned its verdict and been discharged was not permitted; noting that "the long standing rule in Oregon is that a *de facto* judge's authority to act cannot be attacked after judgment or otherwise collaterally" (citing *Holman*, 73 Or at 26-27; footnote omitted)).

Father nevertheless argues that that well settled law does not apply here, "because the statutory violation in this case is jurisdictional." *See Kirresh v. Gill*, 309 Or App 47, 54-55, 482 P3d 76 (2021) (general rule that, when a trial

---

[8] We reject father's argument that the de facto judge doctrine does not apply because it is undisputed that he was unaware that Thomas's pro tempore status had expired until he received the email from the presiding judge informing the bar of such, that is, after the acts at issue here. The case father relies on, *McDonnell*, 343 Or 557, does not stand for that proposition. Nor are we aware of any other Oregon authority stating that, for the de facto judge doctrine to apply, a party must have known that the official lacked legal title.

court has both subject matter and personal jurisdiction, its judgment even if erroneous, is not void, is subject to exceptions, including if the error involves "the violation of a statute by which 'the legislature intended to impose a limitation on the trial court's authority to exercise its jurisdiction'" (quoting *PGE*, 353 Or at 859)).[9]

As we understand father's argument, he contends that Thomas violated a statute, seemingly ORS 1.645(2)—which, as noted above, grants a judge pro tempore "all the judicial powers, duties, *jurisdiction* and authority, *while serving under the appointment*, of a regularly elected and qualified judge" of the court to which the judge is appointed. (Emphases added.) Father contends that, by presiding over the case and rendering the judgment after his term had expired, the pro tempore judge committed a "jurisdictional" violation rendering the judgment void. We disagree. As with the disqualification statutes at issue in *McDonnell*, nothing in the text of ORS 1.645(2) suggests that the legislature intended a violation of that statute to deprive the *court* of jurisdiction to hear the case and enter a judgment. 343 Or at 567-68. Jurisdiction is not personal to an individual judge: "There is a well-marked distinction between a judge and a court." *Id.* at 567 (internal quotation marks omitted); *see also id.* (noting that disqualification law "does not oust courts of their jurisdiction, but simply requires that another judge be called to preside in the same court" (internal quotation marks omitted)). Rather, ORS 1.645(2) simply establishes that the *subject matter jurisdiction of a court* presided over by a judge pro tempore is the same as if a circuit judge were presiding. Said another way, this is not a statute "by which the legislature intended to impose a limitation

---

[9] There is no dispute in this case that the juvenile court generally has subject matter jurisdiction over the matter adjudicated, *see School Dist. No. 1, Mult. Co. v. Nilsen*, 262 Or 559, 566, 499 P2d 1309 (1972) (Oregon court has subject matter jurisdiction over an action if constitution, statute, or common law tells court to do something about specific kind of dispute presented); ORS 419B.100(1)(c) (juvenile court has "exclusive original jurisdiction in any case involving a person who is under 18 years of age and *** [w]hose condition or circumstances are such as to endanger the welfare of the person or of others"); ORS 3.260(1) ("The circuit courts and the judges thereof shall exercise all juvenile court jurisdiction, authority, powers, functions and duties."). Likewise, there is no dispute that the court in this case had personal jurisdiction over father and E.

on the trial court's authority to exercise its jurisdiction." *Kirresh*, 309 Or App at 54-55 (internal quotation marks omitted).

Father also argues that a violation of ORS 1.645(2) is jurisdictional, thus rendering the resulting judgment void, notwithstanding the de facto judge doctrine, because *we* lack jurisdiction to hear an *appeal* of the judgment. *See State ex rel Juv. Dept. v. J. W.*, 345 Or 292, 299, 193 P3d 20 (2008) (explaining that, under ORS 18.035, ORS 18.038, and ORS 18.245, the absence of a "judge's" signature on a judgment document is a jurisdictional defect for purposes of appeal). Again, father misapprehends the de facto judge doctrine. First, we do not see how the question of *our* jurisdiction over an appeal of the challenged judgment is relevant to the issue whether the judgment *below* is void because of a jurisdictional defect. Second, even if it is relevant, as discussed above, application of the de facto judge doctrine resolves any potential jurisdictional defect that would arise on appeal. *See, e.g.*, *Madden*, 207 Or at 90 (acts performed by de facto judge are not invalid); *Holman*, 73 Or at 26-27 ("all orders, judgments, and decrees made, given, and rendered by [de facto judge] are conclusive, valid, and binding upon all parties"). That is, because, as we have concluded, Thomas was a de facto judge, his signature on the judgment is valid and binding, including for purposes of appeal.

Father's due process argument fails for similar reasons. He argues that his due process rights concerning the care, custody, and control of his child were violated, because he was deprived of his right to appeal the jurisdictional judgment as a result of the statutory violation. *See PGE*, 353 Or at 860 (noting that a "statutory violation that also deprives a party of due process may render a judgment void"). However, as just discussed, the underlying jurisdictional judgment here *is* appealable—Thomas's act of signing the judgment, because he was a de facto judge, is valid. Thus, father has not suffered a violation of his due process rights in the manner alleged. *Cf. Kirresh*, 309 Or App at 57-58 (judgment provision that awarded relief not sought in underlying complaint void as violating due process notice requirements).

In sum, we reject father's arguments that the de facto judge doctrine does not apply here and that the jurisdictional judgment rendered by Thomas is void. Because we conclude that the de facto judge doctrine does apply, the judgment is, at most, voidable, and, therefore, it is not subject to collateral attack. *McDonnell*, 343 Or at 570; *Madden*, 207 Or at 90; *Holman*, 73 Or at 26-27; *Hamlin*, 15 Or at 463; *see also PGE*, 353 Or at 856-57 (preservation principles apply to assertion of error with respect to judgments that are merely voidable).

We briefly address father's alternative argument that, even if the judgment was merely voidable rather than void, his ORS 419B.923 motion was not an impermissible collateral attack because it occurred "in the same proceeding" (emphasis omitted) and father "had clean hands and did not know about Thomas's lack of jurisdiction and authority until after the judgment was entered." That argument is foreclosed by the controlling case law, which states that a challenge to the actions of a de facto judge must be made by way of (what is now the statutory equivalent of) *quo warranto* proceedings or, at least, *before* the adverse judgment is rendered.[10] *Madden*, 207 Or at 90 (acts of de facto judge cannot be collaterally attacked, but title or right to office can only be determined by way of *quo warranto* proceedings); *Holman*, 73 Or at 27 ("A party cannot be permitted to wait until an adverse judgment or decree is rendered against him and then claim that the judge before whom his cause was tried was powerless to determine the issues involved."); *Hamlin*, 15 Or at 462 (*quo warranto* proceeding appropriate legal remedy to challenge right to office); *see also McDonnell*, 343 Or at 570 ("Because defendant failed to object when [the disqualified judge] presided over the 2002 penalty-phase proceeding, defendant did not preserve that issue for appellate

---

[10] Father argues that only the district attorney may bring an action under ORS 30.510, the statutory equivalent to the writ of *quo warranto,* which is correct. *See* 320 Or App at 91 n 6. However, father may be a coplaintiff with the state in that action. *See* ORS 30.610 ("When an action is commenced on the information of a private person, as allowed in ORS 30.510, having an interest in the question, such person, for all the purposes of the action, and as to the effect of any judgment that may be given therein, shall be deemed a coplaintiff with the state."). Moreover, father could have challenged Thomas's authority to act before the judgment was entered, as contemplated by *Holman*.

review."). Moreover, Oregon case law governing the validity of actions by a de facto judge does not provide an exception to that rule where the party did not know of the jurist's lack of authority until after the judgment was entered. Given that clear precedent, we are not persuaded by father's argument, largely by analogy to ORCP 71 B, that his motion to set aside the judgment under ORS 419B.923 preserved his objection to Thomas's authority to render judgment and was not an impermissible collateral attack.[11]

The juvenile court did not err in denying father's motion to set aside the judgment.

Affirmed.

---

[11] We recognize that, in *PGE*, 353 Or at 856, the Supreme Court, in discussing void versus voidable judgments, commented that "[a] voidable judgment may be attacked through *** a cognizable collateral challenge, for example, under ORCP 71 B." However, as we read the directly controlling Supreme Court case law governing the de facto judge doctrine, *no* collateral challenges are cognizable to attack the actions of a de facto judge. One of the policy rationales behind the rule requiring swift action to challenge the authority of a de facto judge is, as we understand it, to permit a court that otherwise has subject matter jurisdiction to correct the error.